396          CASES IN THE SUPREME COURT

Guthrie et al. vs. Price et al.                    [May

---

## GUTHRIE ET AL. VS. PRICE ET AL.

The decision *In the Matter of the Will of Cornelius*, (14 *Ark.* 675): that where the testator's name is written to the will by another person, and he makes his mark, it is a valid subscription within the meaning of the statute, should not be disturbed.

It being proven that the will was executed in accordance with the formalities prescribed by the statute, the burthen of showing that fraud or imposition was practiced upon the testatrix was upon the parties contesting the validity of the will: and though in determining such question the fact that she could not read, and that the will was not read to her, at the time she signed it, were circumstances to be considered, it was erroneous for the court to tell the jury, as a matter of law, that it being shown she could not read, it was necessary to prove that the will was read to her—they having the right to infer from all the circumstances that she knew the contents of the will.

*Error to White Circuit Court.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

JORDAN and HOLLOWELL, for the plaintiffs in error.

The court seems to have refused the instruction of the defendants below, on the ground that the making of a mark by the testatrix is not a subscribing; and that in case the party signs by making a mark, it must appear that her name was written by one of the subscribing witnesses. The question presented then, is whether the execution of a will by making a mark is a sufficient compliance with that clause of the statute, which requires that it must be subscribed by the testator at the end of the will. This question was settled by the decision of this court *In the Matter of the Will of Cornelius*, 14 *Ark*. 686. We take the rule to be that when the testator, from physical inability (or other cause) to sign his name, requests another to write it, and adopts the signature as his own, without making his mark, then the person writing his name must subscribe his own name as a witness. But when the testator executes the will by making his mark, it is not necessary for the party who wrote the name to be a subscribing witness. The following authorities are submitted on this point: *In the Goods of Savory*, 6 *Eng. Com. Law & Eq.* 583; *In re Field* 2 *Curtis* 225; *Chaffee vs. Baptist Miss. Com.* 10 *Paige* 89; *Butler vs. Benson*, 1 *Barb. S. C. Rep.* 533; 1 *Jarman on Wills* 144.

The words *subscribed* and *signed*, when used in reference to the execution of a will, under our statute, are synonymous: and the meaning of the clause in the statute, that "the will shall be subscribed by the testator at the end of it," is that he shall sign it. See, as to what is a sufficient signing of a will to make it valid. 1 *Jarman on Wills* 113, *and note* 1; 1 *Greenl. on Ev.*, *sec.* 674; *Jackson vs. Van Dusen*, 5 *J. R.* 144.

Even if the testatrix had not made her mark, the fact that she produced the will, and declared, in the presence of witnesses, that it was her will, is sufficient evidence of its execu-

tion. 1 *Greenl. Ev.* 675, 677; *White vs. British Museum*, 6 *Bing.* 310; *Hull vs. Hull*, 13 *Pick.* 373; 4 *Kent Com.* 516.

The second instruction asked by the plaintiffs is objectionable unless the further qalification be added, that the production of the will by the testatrix, prepared and ready for execution, raises a presumption that it had been read to her, and that she understood its contents.

B. D. TURNER, for defendants in error.

Although the first instruction given for these defendants is in conflict with the decision of this court *In the Matter of the Will of Cornelius*, 14 *Ark.* 675, we think it was authorized by the statute of wills, and was proper; and with respect, but with confidence, submit that that decision should be reconsidered.

The first clause of the fourth section, statute of wills, declares that the will " must be *subscribed* by the testator at the end of the will, or by some person for him at his request;" and the fifth section declares that "every person who shall *sign* the testator's *name* to any will, by his direction, shall *write* his own *name* as a witness to such will, and state that he *signed* the testator's *name* at his request." Now, we think it is evident that in this last section the legislature had direct reference to the first clause of the fourth section above quoted; and if so, they intended by the word "subscribed," in that clause, precisely the same thing that they intended by the words "sign the name," and "write his name," in the fifth section; which, we think, was never intended by our legislature to be performed by a mere *mark*, either by a testator or by a witness; for if a will can be "subscribed" by a testator by a *mark*, it can also be "subscribed" "by some other person for him" by a mark; for the same word "subscribed" is used in the fourth section, both for the testator and the "other person" who subscribed for him. And if a *mark* is sufficient under that section, it must also be sufficient under the fifth section, which has direct reference and allusion to the fourth section, as no other part of the statute except the fourth section, had authorized any other per-

son to " subscribe" or " sign the testator's name" to his will. Did the legislature intend that? If so, it is also intended that the person who signed the testator's name, under the fifth section, by a *mark*, might also by a mark " *write* his own *name* as a witness." They both mean the same thing; for we cannot suppose that the legislature would permit an illiterate man to " sign a testator's name" by a mark, and then require him to " *write* his own name" as a witness, unless it was intended that he might do that also by a mark; and if it intended this, it also intended that by a like *mark* he might " state that he signed the testator's name at his request," a thing which is perfectly impossible, for no *mark* could make such a statement. Then we take it that the words " *sign* the name" and " *write* his name," in the fifth section, cannot mean making a *mark;* and as the legislature evidently intended the same thing by the word " subscribed," in the fourth section, that it meant by the words " sign" and " write the name," in the fifth section; and as the word " subscribed," in the fourth section, is used for both the testator and the party who subscribes for him, we think the conclusion must be that in Arkansas a will cannot be executed by a *mark*.

For the foregoing reasons, it is submitted that the first instruction for these defendants in error was properly given, and the instruction asked by the plaintiff properly refused. And see *Abraham vs. Wilkins,* 17 *Ark.* 292; *Greenough vs. Greenough,* 1 *Jones* 489; *Cavett's Appeal,* 8 *W. & S.* 26; *Grobill vs. Barr,* 5 *Barr* 441; *Asay vs. Hoover,* 5 *Barr* 21.

As to the second instruction given for defendants in error, see *Harrison vs. Rowan,* 3 *Wash. C. C.* 580, 584, 585; *Day v Day,* 2 *Green Ch. Rep.* 550; *Gerrish vs. Nason,* 22 *Maine* 438. *Billinghurst vs. Vickers,* 1 *Phil. Ec. Rep.* 189; *Harding vs. Harding,* 18 *Penn. State Rep.* (6 *Harris*) 340; *Clifton vs. Murray,* 7 *Georgia* 564.

Now, it is clearly proven that the testatrix in this case, could not read, and none of the witnesses could tell that the will was ever read to, or that she had any knowledge of its contents.

'Tis true, she said it was her will; but how did she know that? Not even her mark was to it at the time she produced it to the witnesses, and she could not know that it was her will, except by being told so by the scrivener, or by its being properly read to her by him, and also by being able to identify it as the same unaltered writing which he had prepared for her. And so the evidence of its being her will, is not that she made her mark to it, and that it was properly attested by witnesses, which, in this case amount to nothing; but the several facts, *whether the scrivener honestly conformed to her instructions in writing it, and properly read it over to her, and that it was the same unaltered will which he had prepared:* none of which appears from the evidence. And this again illustrates the necessity for that construction of the statute which the circuit court gave in the first instruction.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

This was an issue of *devisavit vel non,* determined in the circuit court of White county.

The validity of the will of Susan Guthrie, which had been regularly probated, was contested by Fielding Price, and wife Mary, and Joseph Price, and wife Martha, the sons-in-law and daughters of Mrs. Price. The defendants in the petition were Nelson Guthrie and four others, the sons of the testatrix.

The name of Susan Guthrie was subscribed to the will, and between her christian and surname was her mark, in the form of a cross.

It seems that she had two daughters, the contestants, and five sons. The provisions of the will are few and simple. She gave to each of her three younger sons a horse, bridle, saddle, cow and calf, bed and bedding, to make them equal, as recited in the will, to their two elder brothers, who had before received as much.

To each of her daughters she bequeathed only one milch cow, for the reason, as stated in the will, that they married before the property devised by her was accumulated, and ren-

OF THE STATE OF ARKANSAS. 401

TERM, 1861.]                Guthrie et al. vs. Price et al.

dered their brothers and her no assistance in acquiring the same.

All the residue of her estate she bequeathed to her five sons, to be equally divided between them. How much property she had does not appear. She was a widow.

The subscribing witnesses to the will were J. J. Watson, E. F. Martin, and J. Franklin.

On the trial, *Watson* testified that he and the other attesting witnesses signed the will as such, at the request of Mrs. Guthrie, in her presence, and in the presence of each other. That he saw her sign it by making her mark thereto. She produced the paper when they were about to attest it, and declared that it was her will, and she desired them to witness it as such. He did not see her write her name: she made her mark to the paper. Did not see any person write her name to the instrument. Did not know who wrote it. She was of sound mind at the time— as sound as usual. The will was not read to Mrs. Guthrie in the presence of witness, and he did not know that it ever was read to her.

Two witnesses testified that they knew her well, and were under the impression she could not read or write. She frequently got one of them to look over her papers, and get such of them as she wanted.

Another witness gave it as his opinion, from comparison of handwritings, that her name, as subscribed to the will, was not in the handwriting of either of the attesting witnesses.

Here the petitioners closed.

*J. Franklin*, introduced by defendants, testified, that he and the other attesting witnesses subscribed the will, at the request of Mrs. Guthrie, and in her presence, etc. She produced the instrument, and declared the same to be her will. Did not see her write her name to the will, but saw her make her mark thereto, as it appeared upon the paper. She acknowledged, when she made her mark, that the same was her act and deed —that it was her will—and she requested him to witnesss the same. She was of sound mind at the time. She was a woman

26

of very good sense, and was tolerably particular about her business transactions. Did not think she could read or write. The will was not read to her in his presence, and if it was read over to her, he never knew it.

The above, with the will, was all the evidence introduced upon the trial.

The petitioners moved the court to instruct the jury, as follows:

"1. If the jury believe, from the evidence, that the signature or name of Susan Guthrie, signed to the will, is not in her proper handwriting, and that her name was signed by some other person, unless they further find from the evidence, that the person who wrote her name, wrote his own name as a witness to such will, and stated that he signed her (the testatrix's) name, at her request, they should find for the petitioners, that the paper produced is not the will of Susan Guthrie:

2. If the jury believe, from the evidence, that the testatrix could not read writing, then, before they can find said paper to be her will, they must find from the evidence that said paper was read to her, and that she was informed as to its contents.

3. If the jury believe, from the evidence, that the testatrix could not read writing, before they can find it to be her will, they must find from the evidence that said paper was read to her in the presence of the attesting witnesses, and that she understood its contents.

4. Before they can find the paper to be the will of the testatrix, they must find from the evidence that it was subscribed by the testatrix at the end of the will, or by some person for her, at her request."

The court gave the 1st, 2d and 4th instructions, against the objection of the defendants, but refused the third.

The defendants asked the court to charge the jury:

"That if they believed, from the evidence, that Mrs. Susan Guthrie signed said paper writing, purporting to be her will, by making her mark, and, in the presence of the attesting witnesses thereto, acknowledged and declared that the same was

her act and deed, and that the same was her will, this is a sufficient subscribing under the statute."     · ;

. Which the court refused to give.

The jury found against the validity of the will, and the defendants brought the case here on exceptions to the instructions of the court. ·

1. The court, in giving the first and fourth instructions, moved by the petitioners, and in refusing the instruction asked by the defendants, ruled directly contrary to the decision of this court *In the Matter of the Will of Cornelius*, 14 *Ark.* 675, where it was held, that where the testator's name was written to the will by another person, and he made his mark, it was a valid subscription within the meaning of the statute.

The counsel for the petitioners have asked us to review the opinion in that case, criticising, with much ingenuity, the words of the statute, to show that the opinion is not well founded. But the decision is supported by adjudications upon statutes similar ·to ours, and by the standard text books, and we think it should not be disturbed.     ·

2. In the 2d instruction moved by the petitioners, the court told the jury, in effect, that notwithstanding the will was executed in accordance with the formalities prescribed by the statute, yet it being shown that the testatrix could not read, the will was invalid, unless it was proven that it was read to her, and that she was informed as to its contents. Is this the law?     ·

In *Harris vs. Brown*, 3 *Wash. C. C.* 584, where the will was impeached for want of testamentary capacity, and for fraud and circumvention produced upon the testator by the person who drew the will, Mr. Justice WASHINGTON said : " A third objection was made by one of the defendant's counsel, which was, that the will is not proved to have been read over to the testator, in the presence of the witnesses. We understand this to be made as a substantive objection to the will, although it was not so argued by the other counsel on the same side *who very properly considered it merely as a badge of fraud*, that it was not proved to have been read.' We will, therefore, at once,

404  CASES IN THE SUPREME COURT

Guthrie et al. vs. Price et al.    [MAY

dispose of this point, by observing that it is not necessary, in order to establish a will, that the person claiming under it should prove that it was read over to the testator, in the presence of the attesting or other witnesses. It would be an unwise provision in the law to require this to be done, inasmuch as most men are careful to confine to their own breasts the manner in which they have disposed, or mean to dispose of their property by will. The domestic peace and harmony of the testator's family might be very unhappily jeoparded, if publicity were necessary to be given on such occasions. The law presumes, in general, that the will was read to or by the testator.

"But if evidence be given that the testator was blind, or from any cause incapable of reading; or if a reasonable ground is laid for believing that it was not read to him, 'or that there was fraud or imposition of any kind practised upon the testator, it is incumbent on those who would support the will, to meet such proof by evidence, and to satisfy the jury either that the will was read, *or that the contents were known by the testator.*"

In *Day vs. Day*, 2 *Green's Ch. Rep.* 551, the ORDINARY said: It is admitted, on both sides, that the formal execution of the instrument, so far as regards the signing and publication, is substantially proved. The testator affixed his name in the presence of all the witnesses, and acknowledged the instrument to be his will. The difficulty grows out of the question whether it is sufficiently manifested that the testator understood the contents of the instrument he was signing. In ordinary cases, when a testator is in health, and of ability, it is not necessary to show that the will was read over to him, or that he knew the contents of it. The legal presumption in such cases is always in favor of the will; and he who seeks to impeach it, must show, conclusively, that the testator was imposed on, or that there was some mistake, whereby he was deceived.

"In this case, it is without question that the testator did not read the will himself. It was not in his possession, so as to afford him an opportunity; and, if it had been, he was so weak and

so low as to be unable to do it. It is also clear, that it was not read to him. It must, then, be shown to the satisfaction of the court, that he was in some other way made acquainted with the contents of the instrument, and approved them. In this case the presumption of law fails: and it becomes the duty of the person offering the will, to show that the contents of the paper were fully made known to the testator. So if the testator is incapable of reading the will, whether the incapacity arise from blindness, or any other cause, the rule is the same, and the burthen of proof is thrown on the person offering the will. 1 *Swin.* 96."

In *Clifton vs. Murray*, 7 *Geo.*, 565, Lumpkin, J., said: "This case is narrowed down to a single point: when a testator is blind, or so illiterate as to be unable to read, or write, is it indispensable to the validity of his will that it be read over to him, at the time of its execution, in the presence of the subscribing witnesses? *Swinburne* intimates that it is. \* \* \* \* \* This may be the rule of the civil law; it would seem, however, never to have been adopted as that of the common law, \* · \* \* \* It has been expressly held, in many reported cases, that a will need not be read over to a blind testator previously to its execution. \*. \* \* It is, after all, *an issue of fraud;* and the question as to whether or not the testator had been imposed on, is one fact to be left to the jury. And the circumstance that the *will was not read*, will be weighed by them in coming to a conclusion. We cannot get our consent, however, to lay it down as an inflexible rule of *law*, that the validity of the instrument depends, in every case, upon its being proved that it was read in the presence of the witnesses previous to its execution. It would deprive testators of the privilege secured to them, upon sufficient reasons, of secreting the contents of testaments, until after their death, in order to insure their peace." etc.

" It was, at one time, contended that the will of a blind testator should be read over to him in the presence of the witnesses, and that the identical will offered for proof should have been

read, but the more reasonable doctrine, which may be now considered as established, is, that, if the court of probate is satisfied from the evidence that the testator knew the contents of the will offered—either by hearing it read, or by narrating all of its provisions to others—or, *if proved in any other manner that he knew its contents,* the court will probate the will. *Mod. Prob. Wills,* 201."

In *Boyd vs. Cook,* 3 *Leigh,* 32, the will of a blind man was admitted to record upon the ground that it appeared to the court, by satisfactory evidence, that he was acquainted with its contents: although it was not read over to him. *1b.,* 205. In that case CARR, J., said: " In the case of a man who can see, the signing his will in the presence of witnesses, or acknowledging it to them to be his will, as signed, *although he be illiterate,* is proof that he was acquainted with its contents; but, in the case of a blind man, although the forms of the statute be complied with, the jury, or probate court, will, to rebut any imputation of fraud, require stronger evidence than the mere attestation of the signature," etc.

*Shanks et al. vs. Christopher,* 3 *A. K. Marsh.,* 144, was very similar to the case now before us. Two of the subscribing witnesses deposed that they had, at the request of the testator, attested the instrument in question, by subscribing their names thereto, in his presence; and that at the time of their attestation, he was of sound mind, and acknowledged the instrument to be his will. The name of the testator was signed to the instrument, with the mark of a cross between the christian and surname, and it was admitted that he could neither read nor write, and neither of the subscribing witnesses read, or heard the instrument read to the testator. It appeared that he had manifested some care in the selection of the witnesses to attest his will, that they were of good character, and that the disposition made by the will of the testator's property was in accordance with his settled intention, as evidenced by his reiterated declarations, etc., etc. On this state of facts, it was contended that the instrument ought not to be admitted to record as the

will of the testator, because it did not appear to have been read to him, etc. The court said that the will was executed as required by the statute. That the statute did not require the will to be read to the testator. That a testator ought to know the contents of the will, there could be no doubt, for, otherwise, it could not be said to be his will. But the execution of it by the testator, with the solemnities required by the statute, did, of itself, create a presumption of his knowledge of its contents, and that they conform to his intention. It must, therefore, be incumbent upon those who seek to avoid the will, on the ground that it contains a disposition of the testator's estate inconsistent with his intention, or, of which he has no knowledge, to establish the fact by proof *aliunde* the instrument itself. But so far from there being any proof of such facts in this case, said the court, all the circumstances of the case conduce to evince the contrary.

In the case before us, it was proven that the will was executed in the manner prescribed by the statute. It was subscribed at the end, by the testatrix. It was done in the presence of each of the attesting witnesses. The testatrix, at the time of subscribing it (by making her mark) declared the instrument, so subscribed, to be her will. There were at least two attesting witnesses, each of whom signed his name, as a witness, at the end of the will, at the request of the testatrix. She was of sound mind, mature age, etc. *Gould's Dig.*, chapter 180, secs. 1–4.

It being proven that the will was executed in accordance with the formalities prescribed by the statute, the burthen of showing that fraud or imposition was practiced upon the testatrix was upon the parties contesting the validity of the will. See *Tucker vs. Calvert*, 6 *Call*, 98, *Op. Judge Roane.*

It was proven that she could not read, and it was not shown that the will was read to her at the time it was executed, but it may have been before. She produced the will herself, declared it to be her will, asked the witnesses to attest it as such, signed it by making her mark. She was a woman of good sense, particular about her business transactions, and manifested her usual soundness of mind at the time. It is not shown that she was la-

boring under any feebleness of mind from disease, or approaching dissolution. The provisions of her will appear to be reasonable. It is not shown that any imposition was practiced upon her, or that her sons had any agency in the preparation of the will.

It was erroneous for the court to tell the jury, as a matter of law, that it being shown that she could not read, it was necessary to prove that the will was read to her. They had the right to infer, from all of the circumstances, that she knew the contents of the will, though, as shown by the authorities above quoted, in determining whether there was fraud or imposition in the execution of the will, the fact that she could not read, and that the will was not read to her, at the time she signed it, were circumstances to be considered by the jury.

The judgment must be reversed, and the cause remanded for a new trial.