49  157
53  491

JAMES THOMPSON v. JOHN THOMPSON ET AL.

FILED SEPTEMBER 16, 1896.   No. 6850.

1. Wills: EXECUTION: SUBSCRIBING WITNESSES. Section 127, chapter 23, Compiled Statutes,. construed, and *held* (1) not to require the words composing the name of an illiterate testator to be written at the end of his will, either by himself or by some person by his direction; (2) if the testator, being of sound mind and with the intention of making a will, voluntarily made a mark, cross (X), or other character, which he intended and adopted as and for his signature, it satisfied the statute as to signing; (3) not to require the witnesses to a will to subscribe it at the express request of the testator.

2. Trial: SPECIAL INTERROGATORIES: FAILURE OF FOREMAN TO SIGN ANSWERS: OBJECTIONS: REVIEW. Where special interrogatories are submitted to a jury, and by it answered and returned into court with their general verdict, and received and recorded therewith without objection, it is too late afterwards to insist that the court erred in receiving and recording the special interrogatories because not signed by the foreman of the jury.

3. Wills: TESTAMENTARY CAPACITY: UNDUE INFLUENCE. Evidence examined, and *held* to sustain the finding of the jury that the testator at the .date of the execution of the will was of sound mind, and that he was not induced to execute the will by an undue influence which controlled his volition and destroyed his free agency.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

The facts are stated by the commissioner.

*Samuel J. Tuttle,* for plaintiff in error:

The will was not properly executed. (*Greenough v. Greenough,* 11 Pa. St., 489; *Barr v. Graybill,* 13 Pa. St., 396; *Waite v. Frisbie,* 47 N. W. Rep. [Minn.], 1069.)

The will was not attested as required by statute. (*Swift v. Wiley,* 1 B. Mon. [Ky.], 114; *In re Downie's Will,* 42 Wis., 66; Jarman, Wills, 207, note 7; *Hall v. Hall,* 17 Pick. [Mass.], 373.)

References as to questions of testamentary capacity and undue influence: 1 Jarman, Wills, 68, note *c; Buttin v. Barry,* 1 Curt. [Eng.], 614; *Harvey v. Sullens,* 46 Mo., 147; *Tyler v. Gardiner,* 35 N. Y., 559.

The failure of the foreman of the jury to sign the answers to the special interrogatories makes the judgment erroneous. (Code of Civil Procedure, secs. 291, 292; *Sage v. Brown,* 34 Ind., 464; *Doom v. Walker,* 15 Neb., 339.)

*Sawyer, Snell & Frost, contra:*

Plaintiff in error having failed to object to the receiving of the general verdict and special findings at the time they were returned by the jury, cannot now object that they were not properly authenticated. (*Vater v. Lewis,* 36 Ind., 288; *McElfresh v. Guard,* 32 Ind., 414.)

The will was properly signed, attested, and witnessed. (*Vernon v. Kirk,* 30 Pa. St., 222; Beach, Wills, sec. 28; Schouler, Wills [2d ed.], secs. 303, 306, 347; *Will of Susan Jenkins,* 43 Wis., 610; *Everhart v. Everhart,* 34 Fed. Rep., 85; *Jackson v. Jackson,* 39 N. Y., 159; *Allaire v. Allaire,* 8 Vroom [N. J. Law], 312; *In re Lewis,* 7 N. W. Rep. [Wis.], 834; *McCurdy v. Weall,* 7 Atl. Rep. [N. J.], 566; *Tappen v. Davidson,* 27 N. J. Eq., 459; *In re Nelson's Will,* 36 N. E. Rep. [N. Y.], 3.)

RAGAN, C.

This is a proceeding in error to reverse a judgment of the district court of Lancaster county affirming a judgment of the county court of said county admitting to probate a paper purporting to be the last will and testament of John Thompson, Sr. The concluding portion of the will in controversy is in words and figures as follows:

"In testimony whereof, I hereunto set my hand and seal, and publish and declare this to be my last will and testament, in the presence of the witnesses named below, this 19th day of December, in the year of our Lord eighteen hundred and eighty-eight.

                                                His
                "JOHN THOMPSON, SR.     x
                                              mark.

"Signed, sealed, published, and declared by the said John Thompson, Sr., as and for his last will and testament in the presence of us, who, in his presence and at his request, have subscribed our names as witnesses hereto. This will is written with a typewriter upon two sheets of paper.                    A. J. SAWYER.
                                        "A. L. FROST."

It appears from the evidence that the Hon. A. J. Sawyer at the date of the execution of the will in controversy was a practicing attorney at law, having an office in the city of Lincoln; that on the date of the will the testator came to Mr. Sawyer's office and informed him that he wished to make his will, wished Mr. Sawyer to draw it, and explained to him what he wished it to contain; that thereupon Mr. Sawyer dictated the will to a stenographer, and after it had been printed upon a typewriter he read the will over to the testator. It further appears from the evidence that the testator was illiterate and unable to sign his name, and someone, presumably Mr. Sawyer, wrote the words "John Thompson, Sr., his mark." The testator then took hold of the pen-holder, Mr. Sawyer also having hold of it, and made the charac-

ter or cross (x) between the words "his" and "mark," and in the testator's presence and in the presence of each other Mr. Sawyer and A. L. Frost subscribed the will as witnesses. Section 127, chapter 23, Compiled Statutes, provides: "No will made within this state, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge, or in any way affect the same, unless it be in writing and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."

1. The first argument relied on here for a reversal of this judgment is that the testator by making "his mark" did not sign the will within the meaning of the statute just quoted; or, to express it differently, that a testator cannot sign his will by merely making "his mark." To sustain this contention we are cited to *Greenough v. Greenough*, 11 Pa. St., 489, *Asay v. Hoover*, 5 Pa. St., 21, and *Grabill v. Barr*, 5 Pa. St., 441. If it can be said that these cases are authority for the contention of counsel, is is sufficient to say that they have been expressly overruled by the supreme court of Pennsylvania in *Vernon v. Kirk*, 30 Pa. St., 222. But so far as we have been able to examine the authorities, they are all to the effect that a testator who is, by reason of illiteracy, unable to write his name may make a valid will by signing it with a mark or cross.

In Jarman, Wills [6th Am. ed.], p. 125, it is said: "Where a testator is unable to write, from ignorance, perhaps a mark is to be preferred to a signature by the hand of another, as being the more usual mode of execution by illiterate persons; for in regard to this and all other par-

ticulars the prudent course is to make the execution of the will conform as much as possible to the testator's ordinary mode of executing instruments." To the same effect see Beach, Wills, sec. 28.

In Schouler, Wills [2d ed.], sec. 303, it is said: "To write out one's own name in full is doubtless the safest course, as well as the most natural; for such compliance best indicates a rational mind, free will, and physical power at the date of execution. But, undoubtedly, the making of his mark by the testator will satisfy the statute; and that, too, as various cases rule, notwithstanding he was able to write at the time. Thus has it been held in cases arising under the statute of frauds; and those decisions apply equally to the statute of Victoria, which is expressed in language almost identical, as also to most American Codes. Other modes of signature are permitted besides. Accordingly the will has been upheld where the testator made a mark, with his hand guided or not guided by another; or where the testator wrote only his initials; or where his full signature was effected by the aid of another person, who guided his hand; or where he stamped his name; or where only the Christian name was signed; provided that in all such cases the testator's knowledge and free consent and completed testamentary purpose accompany the act, which here is an act of signature by himself."

"If an illiterate but intelligent testator makes cross strokes with his pen upon the paper the act of signature is his own; and so, too, where the hand of a testator who is physically unable to subscribe without assistance is guided by another. Wherever, in truth, the act is the testator's own act, *animo testandi*, though with the assistance of another, it is not necessary to prove any express request for assistance on his part. And under any circumstances, a testator signs his will where he makes the physical effort and performs the act, even though his hand be steadied or guided by another, if something is produced upon the paper sufficient to identify his signa-

ture, and his own purpose to sign accompanied the action, while he was assisted and not controlled." (Schouler, Wills [2d ed.], sec. 306.)

Construing a statute of Wisconsin almost identical with ours quoted above, the supreme court of that state held: "If the testator's name is, in his presence and by his express direction, signed to the will by another person, or if the 'testator affixes his mark thereto, that is a sufficient sign." (*Will of Susan Jenkins*, 43 Wis., 610.)

Construing a statute of Massachusetts similar to the Nebraska statute quoted above, the supreme court of that state held: "Affixing a cross by a testator to his will as and for his signature is a sufficient signing." (*Nickerson v. Buck*, 12 Cush. [Mass.], 332.)

2. Another argument is that the judgment is wrong because the evidence does not show who wrote the words "John Thompson, Sr., his mark," at the end of the will. But the statute is not to be so construed as to require the words composing the name of the illiterate testator to be written at the end of the will, either by himself or some other person by his direction; nor is it absolutely essential to the validity of the will of an illiterate testator that the words composing his name should be written at the end of the will. If the testator, being of sound mind and with the intention of making a will, voluntarily made a mark, cross, or other character which he intended and adopted as and for his signature, it satisfied the statute. The words, "John Thompson, Sr., his x mark," found at the end of the will under consideration meant and were intended only to mean that the cross or character was John Thompson, Sr.'s, signature. The pronoun "his" being the old form, for which we have substituted the apostrophe and the letter "s," so that the expression "John Thompson, Sr., his x mark," is the equivalent of "this mark (x), or this cross (x), is John Thompson's signature."

3. Again, it is argued that the judgment must be reversed because the evidence does not show that the witnesses to the will subscribed it at the request of the testator. The

answer to this argument is that no such requirement is found in the statute. An analysis of the statute discloses that, aside from nuncupative wills, a will to be effectual to pass an estate must be in writing; must be signed by the testator, or be signed by some person in his presence and by his express direction; must be attested and subscribed in the presence of the testator by two or more competent witnesses. The will under consideration was executed in exact conformity to the statute.

4. A fourth argument is that the evidence does not support the finding made by the jury in the district court, that the testator, at the date of the execution of the will was of sound mind, and that he was not induced to execute the will by an undue influence which controlled his volition and destroyed his free agency. On the contrary, we are of opinion that the evidence sustains the finding of the jury. It appears, indeed, that the testator was an old man, somewhat weak, perhaps, both in body and mind, but it is very doubtful if the evidence in this record would sustain a special finding that at the time he executed the will he was of unsound mind, or that he was induced to execute the will by any undue influence whatever.

5. In the district court the jury, in addition to a general verdict, was required by the trial court to answer certain special interrogatories. These they answered and returned into court with their general verdict, but the special interrogatories were not signed by the foreman of the jury. It is now insisted that the court erred in rendering judgment because the answers to the special interrogatories were not signed by the foreman of the jury. There are two answers to this argument. In the first place, there is entire harmony between the general verdict and the special interrogatories, and if the court erred in receiving the special interrogatories, unsigned as they were by the foreman of the jury, it was error without prejudice; and in the second place, the general verdict and the special interrogatories were returned into court

by the jury and received and recorded without any objection or protest from any one. If the plaintiff in error desired to object to the receipt and recording of the special interrogatories as returned by the jury because they were not signed by the foreman, he should have made the objection to the trial court at the coming in of the verdict. It was too late to make it afterwards. The judgment of the district court is right and is in all things

AFFIRMED.