[No. 12230.   Department Two.   August 4, 1915.]

THOMAS WILSON et al., Appellants, v. WILLIAM CRAIG et al.,
Respondents.[1]

WILLS—TESTAMENTARY CAPACITY—EVIDENCE—SUFFICIENCY.  Testa-
mentary capacity to make a will, excluding various relatives, by one
who had suffered a stroke of paralysis the day before and was par-
tially disabled, is shown by the evidence of his lawyer and a banker,
his intimate friend, who were the only persons present, to the effect
that he had complete testamentary capacity, knew his property, his
relatives and heirs at law, and the disposition he desired made of
his estate.

WILLS—EXECUTION—"SIGNED"—STATUTES — CONSTRUCTION.  A tes-
tator, by making his mark after another has written his name at his
request, "signs" the will, within the meaning of Rem. & Bal. Code,
§ 1320, requiring a will to be signed by the testator; and in such
case, there is no room for the application of § 1321, providing that
any person who shall sign the testator's name to a will shall sub-
scribe his own name as a witness and state that he subscribed the
testator's name at his request.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered April 11, 1914, upon findings
in favor of the defendants, dismissing a will contest, tried to
the court.  Affirmed.

*Jas. J. Anderson* and *Wesley Lloyd,* for appellants.

*Burdick & McQuesten,* for respondents.

CROW, J.—On August 20, 1913, John Wilson, a bachelor
sixty-seven years of age, died in Pierce county.  On August
23, 1913, an instrument purporting to be his last will and
testament was admitted to probate by the superior court, and
Anna Craig was duly appointed and qualified as executrix.
By the terms of this will, the testator devised and bequeathed
one-fourth of his estate to each of the following persons:
William Craig, Anna Craig his wife, Joe McKnight and
Maggie McKnight.   The record shows, that all of these

[1]Reported in 150 Pac. 1179.

legatees except Anna Craig were heirs at law of the decedent, William Craig and Joe McKnight being nephews, and Maggie McKnight being his niece; that he left other heirs at law for whom he made no provision, as follows: Thomas Wilson, a brother, Eliza Watts and Jane Hilton, sisters, Thomas Craig, Samuel Craig, and John Radcliff, nephews, who, upon January 7, 1914, by petition, commenced this action to set aside the will and vacate the order of probate. The grounds upon which they seek to set aside the will are, (1) want of testamentary capacity, and (2) that the alleged will was not executed in the manner required by law.

The trial court found, that the will had been duly admitted to probate; that at the time of its execution, the decedent was partially disabled by a stroke of paralysis, received on August 17, 1913, the previous day; that his right side, arm, and leg were so paralyzed as to deprive him of their use; that his power of speech was so affected as to cause him to speak with difficulty, although he could speak with sufficient distinctness to be heard and understood by those around him; · that the will was written by one G. Dowe McQuesten, an attorney, who read it to the testator; that the testator requested Mr. McQuesten to write the testator's name to the will, which he did, writing the name "John Wilson" and the words "his mark;" that the testator thereupon made his mark as the same appears on the will; that the witnesses to the will thereupon, at the request of the testator, in the testator's presence and in the presence of each other, signed their names as witnesses; that Mr. McQuesten did not state in his certificate as such witness that he wrote the name of the testator at the testator's request; that on August 18, 1913, the day on which the will was executed, John Wilson was of sufficiently sound mind and memory to comprehend and understand the nature and effect of his acts in making the will and to dictate the terms thereof; that he was competent to make distribution of his estate, and that he was not acting under duress or undue influence of any person whomsoever. Upon

these findings, a decree was entered sustaining the will and dismissing the petition. The contestants have appealed.

Appellants' first contention is that the decedent did not have testamentary capacity. On this question we have carefully examined the evidence and conclude that, by a clear preponderance, it sustains the findings of the trial judge. The only persons present with the testator, at the time the will was drawn and executed, were Mr. McQuesten, decedent's attorney, and J. W. Burgan, cashier of a Tacoma bank, a particular friend of the testator. They signed the will as witnesses, and their testimony clearly shows, that the decedent had complete testamentary capacity; that he knew his property, knew his relatives and heirs at law, knew what disposition he desired to make of his estate, and informed Mr. McQuesten of his wishes in that regard. The will was signed and executed in the following form:

"In witness whereof, I have hereunto set my hand and seal this 18th day of August, A. D. 1913.

his<br>
"John  +  Wilson<br>
mark

"The foregoing was signed, sealed, published and declared by the above named testator, John Wilson, as and for his last will and testament in the presence of us who at his request and in his presence and in the presence of each other, have subscribed our names as attesting witnesses thereto this 18th day of August, A. D. 1913.

"G. Dowe McQuesten,<br>
"Residing at Tacoma, Washington.<br>
"J. W. Burgan,<br>
"Residing at Tacoma, Washington."

The evidence shows that, after the will was drawn and had been read to the testator by Mr. McQuesten, the testator said he could not write as his right arm was "no good;" that he requested Mr. McQuesten to write his name, which he did; that the testator then took the pen in his left hand and made his mark on the will and that Mr. McQuesten and Mr. Bur-

gan, in his presence and in the presence of each other, witnessed it.

Section 1320, Rem. & Bal. Code, provides:

"Every will shall be in writing, signed by the testator or testatrix, or by some other person under his or her direction in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator."

Section 1321 provides:

"Every person who shall sign the testator's or testatrix's name to any will by his or her direction shall subscribe his own name as a witness to such will, and state that he subscribed the testator's name at his request."

Appellants' second contention is that, as Mr. McQuesten signed the testator's name to the will at the testator's direction, he should not only have subscribed his name as a witness, but should have stated that he subscribed the testator's name at his request; that he failed to do so; that by reason of such omission, the will was not executed in the manner provided by law; that all formalities required by the statute are mandatory and must be strictly construed, and that the will, for want of such strict compliance, is void. In support of this contention, appellants cite the following cases from Missouri, decided under a statute substantially identical with Rem. & Bal. Code, § 1321, *supra: McGee v. Porter*, 14 Mo. 612, 55 Am. Dec. 229; *St. Louis Hospital Ass'n v. Williams*, 19 Mo. 609; *Northcutt v. Northcutt*, 20 Mo. 266; *St. Louis Hospital Ass'n v. Wegman*, 21 Mo. 17; *Simpson v. Simpson*, 27 Mo. 288; *Catlett v. Catlett*, 55 Mo. 330.

There is no question but that these cases, predicated on a similar statute, sustain appellants' position. For reasons hereinafter stated, we cannot yield our assent to the rule therein announced, being convinced that it is not well founded in reason and is contrary to elementary principles. It will be noticed that, in the earliest case, *McGee v. Porter*, upon which all the others are directly or indirectly based, the

name of the testator was signed by his wife at his request, and that, although witnesses testified she then carried it to him and he dotted over his name, the court says: "The record shows nothing more than a mere subscription of the name, no mark, no dot; the testator's name is written as if he had written it himself." With the will executed in this manner, no mark of any kind being made by the testator, the statute invoked might well be applied and the will held void. In the next case, however, *St. Louis Hospital Ass'n v. Williams, supra,* it appeared that, after the name of the testator had at his request been written by another, he made his mark as in the case now before us, and the Missouri court, following the *McGee* case, held the will void for noncompliance with the statutory requirements. The *McGee* case, followed by the later cases cited, does not sustain or authorize this holding. Appellants also cite *Pool v. Buffum,* 3 Ore. 438, in which a statute similar to Rem. & Bal. Code, § 1321, was construed, and in which the will was executed by the testator in the same manner as the will now before us. The Oregon court, however, while apparently yielding its consent to the doctrine of the Missouri cases, fails to follow them, as it sustains the will, and in the course of its opinion said:

"If making one's mark is a signing within the law, it may be doubted, whether the writing of the name by another at the same time is a *signing* within the meaning of the statute."

In the later case of *Moreland v. Brady,* 8 Ore. 303, 34 Am. Rep. 581, which appellants do not cite, the Oregon court sustained a will executed in the same manner, and said:

"It is claimed by the appellant that the will of Bernard Brady is void, because it appears that he signed it by making his mark, and that some other person signed his name to the same without stating that he signed the testator's name at his request, and as a witness, as required by the statute of Oregon. The manner in which the will was signed by the testator, and attested by the subscribing witnesses, was in substantial compliance with the requirements of the statute

in that respect, as was held by this court in *Pool v. Buffum* (3 Or. 438), to which we refer as decisive of this point."

As above stated, Rem. & Bal. Code, § 1320, provides that a will may be signed by the testator. If in legal contemplation he does so sign when he makes his mark, there is no occasion for complying with the requirements of that portion of § 1321 upon which appellants now rely. Authorities are numerous to the effect that a testator by making his mark meets the requirements of a statute requiring him to sign his will, and that his mark is such a signature. Cases may be found where a mark alone has been held sufficient, where a mark added to the testator's name written by another has been sustained, and where a mark added to the testator's name incorrectly written has also been approved; the courts in each and every instance holding the mark to be the signature of the testator. Jarman, Wills (6th ed.), p. 106, § 79; Greenleaf, Evidence (16th ed.), § 674; *Upchurch v. Upchurch*, 16 B. Mon. (Ky) 102; *Flannery's Will*, 24 Pa. St. 502; *In re Guilfoyle*, 96 Cal. 598, 31 Pac. 553, 22 L. R. A. 370; *In re Mullin's Estate*, 110 Cal. 252, 42 Pac. 645; *Stephens v. Stephens*, 129 Mo. 422, 31 S. W. 792, 50 Am. St. 454; *Rook v. Wilson*, 142 Ind. 24, 41 N. E. 311, 51 Am. St. 163; *Thompson v. Thompson*, 49 Neb. 157, 68 N. W. 372.

In *Upchurch v. Upchurch, supra,* the court said:

"A literal adherence to the words of the statute would operate harshly, and exclude all persons unable to write their names, as witnesses, to wills, however worthy of credence. A more liberal construction will as effectually accomplish the ends of the statute, and not violate its language, nor render invalid a paper proved, as we think this is, beyond all reasonable doubt, to be the last will of the testator by the requisite number of witnesses, whose names were subscribed, though by another, in their presence and at their request. In this conclusion, we are supported by direct authority in a case arising under the statutes of Virginia respecting wills, where the same mode of authentication is required. (6th Grattan's Report, 57.)"

Many other citations might be made in support of the proposition that, by making his mark, a testator himself signs his will. We call attention to an Arkansas case, *In the Matter of the Will of Cornelius,* 14 Ark. 675, which is directly in point and in which the will was signed and executed by the testator in identically the same manner as the will now before us. Section 4 of the Arkansas statute, as stated in the opinion, provides that every will "must be subscribed by the testator at the end of the will, or by some person for him, at his request." The succeeding section 5 reads as follows:

"Every person, who shall sign the testator's name to any will, by his direction, shall write his own name as a witness to such will, and state that he signed the testator's name at his request."

It will be noticed that these sections are substantially the same as Rem. & Bal. Code, §§ 1320, 1321, *supra.* The Cornelius will was assailed in the same manner, and for the same reasons, that appellants now assail the will of John Wilson. The Arkansas court held the will had been signed by the testator, and that it was properly executed. The case is well considered and founded on supporting authorities cited in the opinion. The conclusion of the court is tersely stated in the following words:

"And we think we are giving full effect to the 5th section above quoted, by holding that when the testator's name is signed to a will by his direction, and he does nothing more, thereby adopting such signature as his subscription, in such case the person, so signing for the testator, must also write his own name as a witness, and state that he signed the testator's name at his request, and that it ought not to apply to a case where the testator does himself sign though by making his mark."

The substance of this holding, which we adopt, is that, when the testator signs by making his mark, he signs and executes the will himself, although his name may have been subscribed by another at his request. This conclusion is in line with the authorities above cited, to the effect that a testa-

tor may sign by making his mark. In the later case of *Guthrie v. Price*, 23 Ark. 396, a vigorous attempt was made by counsel to prevail upon the Arkansas court to overrule the *Cornelius* case, but the court, at page 403, said:

"The court, in giving the first and fourth instructions, moved by the petitioners, and in refusing the instruction asked by the defendants, ruled directly contrary to the decision of this court in *In the Matter of the Will of Cornelius*, 14 Ark. 675, where it was held, that where the testator's name was written to the will by another person, and he made his mark, it was a valid subscription within the meaning of the statute. The counsel for the petitioners have asked us to review the opinion in that case, criticizing, with much ingenuity, the words of the statute, to show that the opinion is not well founded. But the decision is supported by adjudications upon statutes similar to ours, and by the standard text books, and we think it should not be disturbed."

Our conclusion, from a consideration of our statutes in the light of the authorities which we have carefully examined, is that we cannot follow the early Missouri cases cited by appellants; that when John Wilson, the testator himself, made his mark, he signed the will in compliance with Rem. & Bal. Code, § 1320, although the witness, at the testator's request, had previously subscribed the testator's name, and that the requirements of § 1321, upon which appellants rely, apply only to a case in which the name of the testator is subscribed by another at the testator's request, and the testator himself does no act, by making his mark or otherwise, for the purpose of signing the will.

The judgment is affirmed.

Morris, C. J., Fullerton, Ellis, and Main, JJ., concur.