JOHN THOMPSON, APPELLANT, V. JAMES THOMPSON, APPELLEE.

FILED JANUARY 19, 1898. No. 9482.

1. **Quieting Title:** REVIVOR OF ACTION: RENTS. In an equitable action by a devisee to quiet title and obtain possession of real property it was sought to recover the rental value of the land which had accrued previous to the revivor of the action in the name of such devisee. Whether or not the devisee under any circumstances would be entitled to such recovery of rent is not determined, because neither put in issue by the pleadings nor argued by counsel.

2. **Improvements:** QUIETING TITLE: RENTS. An action of the nature above indicated was pending several years before the death of a testator who was the original plaintiff. The devisee, in whose name the action was revived upon the death of the testator, on his petition recovered for rent until the time of the filing of said petition as though the defendant had during his entire possession been the tenant of the devisee. Supported by sufficient evidence in the same case there were findings that the possession of the defendant had been taken and held in good faith and that lasting and valuable improvements had been made during such possession by such defendant under circumstances which justified him in making them. *Held,* That the district court properly charged the land finally adjudged to belong to plaintiff with the fair value of such improvements even though some of said improvements were made after the commencement of the suit by the testator.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J. *Affirmed.*

*Sawyer, Snell & Frost,* for John Thompson.

References: *Thompson v. Thompson,* 30 Neb. 492, 49 Neb. 157; *Goble v. O'Connor,* 43 Neb. 59; *Carter v. Brown,* 35 Neb. 675; *Jackson v. Loomis,* 4 Cow. [N. Y.] 168; *Fletcher v. Brown,* 35 Neb. 660.

*Samuel J. Tuttle, contra.*

References: *Gallagher v. Mars*, 50 Cal. 23; *Fairchild v. Rasdall*, 9 Wis. 350; *Callanan v. Judd*, 23 Wis. 343; *Gould v. Lynde*, 114 Mass. 366; *Osborn v. Osborn*, 29 N. J. Eq. 385; *Russ v. Mebius*, 16 Cal. 350; *Courvoirsier v. Bouvier*, 3 Neb. 52; *Hansen v. Berthelsen*, 19 Neb. 433; *O'Brien v. Gaslin*, 20 Neb. 347; *Kelley v. Palmer*, 42 Neb. 423; *Dailey v. Kinsler*, 31 Neb. 340; *City of Hastings v. Foxworthy*, 45 Neb. 676; *Merriam v. Goodlett*, 36 Neb. 384; *Skinner v. Skinner*, 38 Neb. 756.

Ryan, C.

The history of this case serves to illustrate the bitterness which is ordinarily the characteristic of a family quarrel. On September 20, 1887, John Thompson, senior, began this litigation by filing his petition in the district court of Lancaster county. On a trial of the issues joined thereon in that court he was unsuccessful and, on an appeal to this court, the judgment against him was reversed. (*Thompson v. Thompson*, 30 Neb. 489.) A lifetime of eighty years' duration was not long enough to enable plaintiff to see this litigation closed, for during its pendency this court has been required to affirm the probate of the will of this octogenarian. (*Thompson v. Thompson*, 49 Neb. 157.) On November 21, 1896, this action was revived in the name of John Thompson, junior, a son of the elder Thompson above referred to, and, by his will, the sole devisee of the land in controversy. After this revivor there was filed a new petition, which we shall now describe, premising, however, that while we might have doubts of the right of the devisee as such to the entire relief prayed by him, we do not deem it advisable to consider this question, which has neither been put in issue by the pleadings nor argued by counsel.

The averments of the petition necessary to be considered were, in effect, that John Thompson, senior, on

April 14, 1881, obtained from the Burlington & Missouri River Railroad Company an executory contract, by the terms of which he was entitled to receive a deed of conveyance of the land herein in controversy upon making certain payments; that in April, 1887, for the sole purpose of obtaining a loan to make the last of said payments, the said holder of said executory contract assigned the same to the defendant James Thompson; that the said James Thompson had refused to reconvey said land to John Thompson, senior, during his lifetime, or to John Thompson, junior, as devisee of John Thompson, senior, though often requested so to do. The final paragraph and prayer of this petition were as follows:

"13. That the rental value of said land during the time that the defendant has been in possession of the same as aforesaid is $300 a year and the defendant has not paid or accounted for the same to this plaintiff or the said John Thompson, senior, in his lifetime, and there is now due and owing from the defendant to the plaintiff, as rent for the use and occupation of said land, the sum of $2,400. Wherefore plaintiff prays that the defendant may be decreed to have no claim, title, estate, or interest whatsoever in or to said land, and that the title of the plaintiff to said land may be adjudged to be made valid as against any and all claims of said defendant; that the defendant be forever enjoined and barred from asserting any claim whatsoever in and to said land adverse to the plaintiff, and that plaintiff's title to said land may be confirmed and quieted and the sheriff directed to put him in possession thereof; also that plaintiff may have and recover a personal judgment against the defendant for the sum of $2,400 and for such other, further, and different relief as may be just and equitable, including costs of suit."

By an answer and reply such issues were joined as rendered pertinent this finding of the district court:

"6. That at or about the time of the procurement of the said loan, John Thompson, senior, in accordance with

his plans and promises in that behalf made, and as he then particularly desired, without any undue influence, unfair practices, or fraud on the part of any one, and more particularly of the defendant James Thompson, made and executed his last will and testament wherein he bequeathed to the defendant all of his property, both real and personal,—his real property consisting only of the land now in controversy herein,—and delivered the same to the keeping of the said son James, the defendant; that the defendant James Thompson, believing that he was to be the owner of the land upon the death of his father, and at his father's request, in good faith, and being in the lawful possession of said land, erected a dwelling house and made other lasting and valuable improvements thereon, the value thereof being as hereinafter found, paying the interest on the mortgage loan and the taxes on said land and has continued so to do up to the present time."

The items found were for breaking the land, $160; dwelling house, stable, and other buildings, $902.30; labor in making improvements, $400; other improvements, $231.71. The total value of these improvements made by James was $1,694. In addition to the above sum of $1,694 for improvements the district court credited James Thompson with the interest on the mortgage loan, which he had paid, $900, and taxes on the real property in dispute, $217.66. The grand total of the allowances in favor of James was, therefore, $2,811.66, and against this there was charged for rent the sum of $1,800. For the difference, $1,011.66, James was decreed entitled to a lien against the real property in controversy. The evidence satisfies us that the figures above set out were substantially just and will, therefore, be so accepted. It is urged, however, that James should be disallowed payment for improvements made on the land after suit had been brought to set aside his title. In this case, as shown by the above quoted finding, there are special features which render inequitable the rule in-

voked. James was rightfully in possession when he made the improvements and they were made at the request of his father. The evidence shows that this request was made because the father of James contemplated making his home for the remainder of his life with James in the house erected at the instance of the father. The court found that the other improvements were made under the same circumstances, and that all these were made upon the faith of an existing will entrusted to the keeping of James, in which will James was named as sole devisee. A subsequently executed will substituted John Thompson, junior, as sole devisee, but this, while it was finally probated as the controlling will of the father, did not alter the fact that James, in reliance on the provisions of the will first executed and the request of his father in connection with the making thereof, acted in good faith in improving the raw prairie land as he did. Aside from this consideration there is another of great weight, and that is, that in the petition of plaintiff it was sought to hold James liable for the rent of the property up to that time just as though he had been a tenant of plaintiff. In making proofs of this rental value of the land the witnesses for plaintiff increased their estimates, year by year, as they themselves stated, because of the increased improvements which, meantime, had been made. Under all these circumstances we are of the opinion that the district court was merely requiring equity to be done in charging the land, of which John was decreed the owner, with the value of these improvements, even though some of them were made after the commencement of this action.

On behalf of James Thompson, on his appeal, we are urged to reconsider some of the views expressed by this court determining the former appeal, but this we do not think the facts justify. It may be possible that some conclusions differing from those of the district court might perhaps have been reached by us had we originally passed upon the evidence, but this question we need not

determine, for there was sufficient to justify the result actually attained, and the judgment of the district court is therefore

AFFIRMED.