No. 93.—MARY ANN CLIFTON and others, plaintiffs in error, *vs.* MARY ANN MURRAY, propounder, defendant.

[1.]. It is not indispensably necessary to the validity of a will made by a blind man, or one who is so illiterate that he is unable either to read or write, that it should be read over to him, in the presence of the subscribing witnesses. It is sufficient for the Jury to be satisfied that the paper propounded as such, *is* the last will and testament of the deceased.

Caveat to will, in Scriven Superior Court.    Tried before Judge HOLT, October Term, 1849.

The questions in this case arose upon a caveat to a paper propounded as the last will of Joseph Daughtry, deceased.    The ev-

idence showed that Joseph Daughtry, an old man, blind from age, and unable to read or write, sent for M. Marsh, Esq. to draw his will, and dictated to him the instructions therefor; that Mr. Marsh carried these instructions home with him, drew the will in strict accordance therewith, and remitted it by mail, by the instruction of Mr. Daughtry, to Mary Ann Murray, the propounder, who was the daughter of deceased, living with him, and the principal legatee in the will; that at the time the will was executed, it was produced by Mrs. Murray—a bystander proposed it should be read, and that Mrs. Murray objected, and Mr. Daughtry said he did not wish it read—he knew its contents.

The Court charged the Jury, that "the fact that the instrument was not read over at the time of its execution, did not, under the circumstances in evidence, necessarily vitiate the will, but was a badge of fraud, and might or might not vitiate the will, according as the Jury might find from the other evidence in the case, that the testator had a knowledge of the contents of the will."

To which charge, the caveators excepted, and now allege the same to be erroneous.

STARNES, for plaintiff in error, cited—

*Swinburne on Wills, part* 2, §11. 3 *Phillimore*, 455, *note b.* 3 *Wash. C. C. R.* 585.

M. MARSH, for defendant, cited—

*Potts et al. vs. House*, 6 *Ga. Rep.* 324. 1 *Jarman on Wills*, 29. *Modern Probate of Wills*, 201 to 210. *Hemphill vs. Hemphill*, 2 *Dev.* 219. *Downey vs. Murphey*, 1 *Dev. & Batt.* 91. *Carr vs. McCann*, 1 *Dev. & Batt.* 276. *Boyd et al. vs. Cook*, 3 *Leigh*, 32.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This case is narrowed down to a single point. When a testator is blind, or so illiterate as not to be able to read or write, is it indispensable to the validity of his will, that it be read over to him, at the time of its execution, in the presence of the subscribing witnesses?

*Swinburne* intimates that it is. He says that "a blind man may

make his testament in writing, provided the same be read over before witnesses, and in their presence acknowledged by the testator for his will. But if a writing were delivered to the testator, and he not hearing the same read, acknowledged the same for his will, this would not be sufficient; for it may be, that if he should hear the same read, he would not acknowledge the same to be his will." *Vol.* 1, *p.* 166.

This may be the rule of the Civil Law; it would seem, however, never to have been adopted as that of the Common Law. For Lord *Coke* says, "if the party who should deliver the deed, doth not require it to be read, he shall be bound by it, though he be *blind* or illiterate." *Thoroughgood's Case,* 2 *Rep.* 9. *Shulter's Case,* 12 *Rep.* 90. And Lord *Coke* goes so far as to hold that the deed is good, not only where it is presumed that it was read, from the contrary not appearing, but that it is good, where the contrary doth actually appear. And there is, we apprehend, no distinction between *wills* and *deeds,* in this particular.

It has been expressly held, in many reported cases, that a will need not be read over to a blind testator, previously to its execution. *Longchamp & Goodfellow vs. Fish,* 2 *B. & P. New Rep.* 415. *Modern Probate of Wills,* 201 *to* 210.

It is, after all, an issue of fraud; and the question, as to whether or not the testator has been imposed on, is one of fact, to be left to the Jury. And the circumstance, that the will was not read, will be weighed by them in coming to a conclusion. We cannot get our consent, however, to lay it down as an inflexible rule of *law,* that the validity of the instrument depends, in every case, upon its being proved that it was read in the presence of the witnesses previous to its execution. It would deprive testators of the privilege secured to them, upon sufficient reasons, of secreting the contents of testaments, until after their death, in order to insure their peace. This very controversy shows the importance and necessity of such a doctrine; and none stand more in need of its benefits than this class of persons; for none are more dependant on the kindly offices of others. And how easy it would be to evade the rule, even if it were established! A party intending to perpetrate a fraud, would have it in his power just as easily to palm a falsely *read* will upon the testator, as one that was falsely *written.*

The argument which has been submitted against the judgment

of the Circuit Court, seems to my mind to assume a position which is not tenable, namely: that the testator must *know* at the time he executes his will, that the paper before him is such.    But this is not the issue.    Is it in truth his will?    *Devisavit vel non ?* is the issue.    Not whether the testator *knew* the instrument at the time of its execution to be his will, but whether *in fact* it was so ?    But even if it were otherwise, and it were necessary to show that the testator, at the time he signed the paper, knew that it was his will, is there not ample testimony to prove that the testator in this case had this knowledge?    He himself expressly waived the reading of the will, when his attention was specially called to the subject, assigning as a reason, that he already knew its contents. Now, it is admitted that the testator was sane, and it is not for us to conjecture how or in what manner he came to the possession of this knowledge.    At any rate, this evidence was most properly left to the Jury; and they having found affirmatively, would the Court be warranted in setting aside the verdict?

But I repeat, the proper inquiry is, was this the will of the testator?    And if the witnesses are to be believed, there can be no doubt but that it is.    The scrivener, Major Marsh, who wrote the will at the request of the testator, and under minute instructions, communicated to him for that purpose, swears that the paper propounded is the same which he drafted; that it is in exact conformity to the directions which he received from the mouth of the deceased, and that it has undergone no alteration ; and this paper was executed by the testator in the presence of the witnesses, freely and without any constraint whatever, he declaring at the time, that he understood its provisions.    We do not see how the Jury could have done otherwise than establish the will.    Nor do we think that there was any error in the charge of the Court, that "although the will was not read over to the testator at the time of the signing, yet if they found from the other testimony, that he knew the contents, that it was sufficient, without being read over to him in the presence of the subscribing witnesses."

Judgment affirmed.