## Hoshauer *versus* Hoshauer.

When the due execution of a will is proved by the subscribing witnesses, and that the testator was of sound mind at the time, it may be admitted in evidence, although the witnesses did not hear it read to the testator.

From its execution, it is presumed that the testator was acquainted with its contents, although he could neither read nor understand the language in which it was written.

The declarations of a testator, made two years after the execution of a will, are incompetent to establish undue influence or coercion exercised over him, in the making of the instrument.

ERROR to the Common Pleas of *Berks county.*

[Hoshauer *v.* Hoshauer.]

This was issue *devisavit vel non,* in which the executors of Peter Hoshauer, deceased, were plaintiffs, and Peter Hoshauer and others, defendants. Peter Hoshauer, on the 15th day of October, 1853, executed the writing which the plaintiffs alleged was his last will and testament. On the trial in the court below, the plaintiffs called the subscribing witnesses and proved by them the execution of the paper by the testator, and their attestation of it as witnesses in his presence and by his request, and that he was of sound mind at the time of so doing. On cross-examination, they said the will was not read over to him or explained at the time of signing; that it had been prepared previously, and they were called only to witness, and were not present at its preparation. The will was written in English.

The defendant proved that Peter Hoshauer, the testator, could neither read nor write, nor understand the English language. That he was 84 years old when he died, on the 23d September, 1855; and then offered to prove that on the 19th September, 1855, he declared to the witness, "that he had made a will; that he had made it as John wanted it; that he had to make it as John wanted it; that he knew it was wrong." The plaintiffs objected to this evidence, and the court rejected it, and signed a bill of exceptions at the instance of defendants.

There being no further evidence offered, the court below (JONES, P. J.) instructed the jury,

"There seems to be nothing in the way of a recovery by the plaintiffs, and the verdict will be so taken."

The charge of the court, and the admission and rejection of the evidence as above stated, were the errors assigned.

*Van Reed* and *Banks,* for plaintiff in error.—There was no proof that the testator knew the contents of the paper he signed. It was not read or explained at the time it was signed, nor is there any evidence that it was at any other time. Whether he knew the contents of the paper, was a fact for the jury to pass upon. This paper he could neither read, nor understand if read to him; it was incumbent on those who set up the paper as a will, that they should show that he knew and understood its contents.

We concede that when a testator's name is affixed to a paper, and the execution is proved, it may go to the jury without proof that it was read to him. But here is a case in which he could not read it himself, or understand the language in which it was written, and it was incumbent on the plaintiffs to prove knowledge of its contents: Tompkins *v.* Tompkins, 1 *Bailey* 92; Harden *v.* Hays, 9 *Barr* 163; Harding *v.* Harding, 6 *Harris* 342.

The declarations were evidence: Nelson *v.* Oldfield, 2 *Vern.*

[Hoshauer *v.* Hoshauer.]

77; 3 *Swinb.* part 7, sec. 18 and 2; 1 *Jarman on Wills* 356; Rambler *v.* Tryon, 7 *Ser. & R.* 90; Real *v.* Real, 1 *Hawk.* 248.

*Hagenman* and *Strong*, for defendants in error.—We would have had the right to have the will admitted, to show the jury what they were to try, without any proof whatever; we did not ask the court to go this length: Cowden *v.* Reynolds, 12 *Ser. & R.* 281; Sholly *v.* Diller, 2 *R.* 177. At the time the paper was admitted, there was no evidence that the testator could not read or understand English.

Was the evidence offered admissible? It was admitted that the testator was of sound mind. Two years after the making of the will, his declarations, then made, are offered to destroy it. This would be to repeal the Act of 1833. A will cannot be *repealed* or altered by parol: Moritz *v.* Brough, 16 *Ser. & R.* 403; Jackson *v.* Kniffen, 2 *Johns.* 31; Dern *v.* Brown, 4 *Cow.* 490; 2 *Green. Ev.* § 690; Comstock *v.* Hadlyme, 8 *Conn.* 254; Sterns *v.* Vanclerc, *W. C. C. R.* 264; Provis *v.* Rowe, 5 *Bing.* 435; Jackson *v.* Betts, 6 *Cow.* 382; Lewis *v.* Lewis, 2 *W. & Ser.* 455; Provis *v.* Reed, 3 *M. & P.* 4; Nelson *v.* McGiffert, 3 *Barb. Ch. Rep.* 158.

The presumption is, from his signing, that he knew its contents: Lewis *v.* Lewis, 6 *Ser. & R.* 495; 1 *Ves.* 11; 6 *Bing.* 310; 2 *Heyw.* 234; Loy *v.* Kennedy, 1 *W. & Ser.* 299.

We therefore submit there is no error in this record.

The opinion of the court was delivered by

LOWRIE, J.—This will was sufficiently proved to go to the jury; but it appeared afterwards that the testator could not understand English, and therefore it is objected that, as the witnesses did not hear it read to him, there is no sufficient evidence that he knew its contents. Yet we must presume that he did. If we had the whole transaction of the preparation and execution of the instrument before us in the evidence, and it then appeared doubtful whether it had been read to him or not, this would be a different case. We must admit the presumptions that arise from the ordinary course of doing such business; and one of them is, that a person, signing any instrument, and asking persons to attest it, has taken care to understand its contents. His signing shows that he is giving expression to some purpose of his mind, and we must presume that he knows that the writing contains that expression. In executing wills and other instruments, the witnesses seldom hear them read, because it is desired to save them this trouble, or not to make the transaction unnecessarily public. When business is done in this ordinary way, we must presume that no fraud or imposition has been practised. The evidence having shown that the will was executed according to the forms of law, and without any fraud, it

[*Hoshauer v. Hoshauer.*]

was right for the court to say "there seems to be nothing in the way of a recovery by the plaintiffs, and the verdict will be so taken," because any other verdict would have been absurd, and counsel could not ask any other.

Even if the testator did, two years after executing his will, declare that "he had made it as John wanted it; that he had to make it so, and he knew it was wrong;" this could not prove fraud in procuring it, though nearly all the estate was given to John's children, himself getting a dollar. An instrument that, for two years, remained subject to change or cancellation, at the maker's pleasure, cannot be set aside on such a declaration. It shows only a want of conviction that he had made as good a disposition of his property as he might have done; but still it was not such a conviction as to lead him to change that disposition, which he might have done then or any time before, by a very simple act. A man who is competent to make a will can so easily correct any of its provisions, however obtained, that it is hard to imagine any kind of declarations of his that would prove it fraudulent, when any considerable time has intervened between its execution and his death. We shall do well to adhere as closely as possible to our statute of wills in ascertaining the fact of the revocation of wills.

Judgment affirmed.