HOLLOWAY KEY et al. v. J. J. HOLLOWAY, Ex'r.

1. WILLS. *Evidence. Devisavit vel non. Want of testamentary capacity.* When a will is impeached for want of testamentary capacity of testator, and it is left doubtful whether such capacity existed, it is not error to instruct the jury that the propounder of the will must meet such proof by evidence and satisfy them that the testator had knowledge of the contents of the will, and that he would not be confined to the evidence of subscribing witnesses or other persons that it was read to the testator, but they might look to all the facts and circumstances surrounding its execution, to see whether or not, in point of fact, he had a knowledge of its contents.

2. SAME. *Same. Sanity. Presumption from.* Where the jury is satisfied that the testator was sane when the will was executed, the presumption is that he knew the contents of the will, and proof of such knowledge is not required until this presumption is rebutted.

3. SAME. *Same. Same.* After an explanation of what is meant by a formal execution of a will, if the proof showed that the testator could read and write, it was not error to instruct the jury that on proof of due and formal execution, the law would presume, in the absence of other proof, that the testator was of sound mind and disposing memory, and that he had knowledge of the contents of the paper.

4. SAME. *Same. Executor.* An executor of a will is a competent witness in a contest over the same except as to transactions with or statements made by the testator.

5. SAME. *Effect of verdict against the executor where formal execution of the will is proved.* It is not error to charge that the meaning of a verdict of

"no will" is that it was *executed* under such circumstances as that by law it cannot take effect as a will, the formal execution having been proved.

6. SAME. *Same.* *Same.* It is only necessary for the executor to prove the formal execution of a will in the first place, and if he introduces testimony of subscribing witnesses as to the testamentary capacity of testator, he is not precluded from introducing other evidence on that question in rebuttal of contestants' evidence.

See Frear *v.* Williams, 7 Baxter, 550.

7. SAME. *Same.* *Drunkenness.* That a testator was under the influence of liquor will not invalidate a will, unless he was in such a condition that he had no intelligent comprehension of the nature of the transaction.

8. SAME. *Same.* *Irrelevant testimony.* *What is such evidence.* *Practice.* It is not error to refuse to allow a witness to answer the question, "how H. got T's. property?" after saying that the testator had told witness that H. would never get his estate as he had gotten T's., and that witness knew how H. had gotten T's., such an inquiry is irrelevant.

9. SAME. *Same.* *Same.* The Circuit Judge acted properly in excluding evidence that the executor had been an agent of the Freedman's Bureau; that the testator was a Southern man, and to a Southern man such a person was odious.

10. SAME. *Same.* *Full proof as to testator's knowledge of his will required.* *When.* When the testator is in extreme old age, imbecile in mind, surrounded by interested parties, incapable of reading or writing, etc., something more than ordinary ground of assurance that he had knowledge of the contents of his will must be required.

Case cited: Patton *v.* Allison, 7 Hum., 335.

---

### FROM FAYETTE.

---

Appeal from the Circuit Court. THOS. J. FLIPPIN, Judge.

J. L. PULLIAM for plaintiff.

H. C. MOOREMAN for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

This was an issue of *devisavit vel non* made up in the Circuit Court of Fayette county to try the question as to the validity of a paper writing propounded as the will of John H. Key, deceased. J. J. Holloway, who propounded the will, is the executor and largest legatee. The contestants are the brothers and nephew of the testator. The grounds of contest were: First, that the will was not executed and attested as required by law; second, that the testator was not of sound mind and disposing memory; and third, that the execution of the will was procured by the fraud and undue influence of the executor and principal legatee.

The cause was submitted to the jury upon the proof and under the charge of the court, when a verdict was found in favor of the validity of the will. The contestants have appealed to this court.

Various errors are assigned for a reversal both in the rulings of the court as to the admissibility of the evidence and in the charge to the jury. Before proceeding to dispose of them it will be proper to give a brief outline of the leading features of the controversy.

It appears that testator had many relatives at the time of his death, including brothers, sisters, nephews and nieces, some of whom were possessed of limited means. He had commenced business in Somerville about 1836, having very little education and no capital. After accumulating some means he took J. J. Holloway in as a partner, and they continued such until testator's death in 1869. They were prosperous

37—VOL. 7.

in business and accumulated a valuable estate, both, as partners and individually, being esteemed rich. The testator was a strongminded, energetic man, always addicted to the use of ardent spirits, and in the latter years of his life drinking to excess. For several years before his death. he lived on a farm, leaving the partnership business of merchandising to be managed and conducted mainly by his partner. Testator died at the age of fifty-five or sixty years, never having been married, and by his will gave most of his estate to his partner, only charged with the support of a widowed sister and her two daughters.

We will first notice the exceptions of contestants to the rulings of the court on questions of evidence.

1. Witness Hardwick, testifying for contestants, stated, that in a conversation with testator, witness said to him that Holloway would get his estate, testator replied: "No, he will never get mine as he got Tillman's, and you know, old man, how he got Tillman's." Upon re-examination, after witness had been cross-examined by the executor, witness was asked by contestants: "How Holloway got Tillman's property?" Upon objection by the executor witness was not allowed to answer. There was no error in this ruling. It was an attempt to go into a collateral matter that could not illustrate the issue before the jury, and therefore had no relevancy to it.

2. During the examination of one of their witnesses, contestants proposed to prove that Holloway, the executor, was at one time agent of the Freedman's Bureau, and that the testator was a Southern man, and

that to Southern men an agent of the Freedman's Bureau was odious. The court excluded the evidence as wholly irrelevant and improper, and manifestly committed no error in so doing.

The executor was examined as a witness for himself. It was objected by contestants that he was incompetent, and the objection overruled. This was not erroneous. He was competent to testify except concerning transactions with or statements by his testator. His testimony was not concerning transactions with nor statements by his testator, and it was therefore competent.

4. After contestants had closed their evidence the executor proposed to make additional proof as to the testamentary capacity of his testator. This was objected to, because the subscribing witnesses, on their introduction to prove the due execution of the will, had been examined as to the mental capacity of testator. The objection was properly overruled. It is now settled in this State that it is only necessary for the executor to prove the formal execution of the will in the first place, but if he goes further, and examines the subscribing witnesses as to testamentary capacity, he is not thereby precluded from adducing other evidence on that question by way of rebutting the testimony of the contestants. See *Frear* v. *Williams*, this volume.

We proceed next to notice the objections taken to the instructions given by the Circuit Judge to the jury.

1. In the introductory portion of his charge, the

judge said: "If your verdict is that this paper writing is not the will of John H. Key, deceased, the meaning of that finding is that this paper was executed under such a state of circumstances as that, by the rules of law, it cannot operate and take effect as a will." It is objected to this charge, that the propounder of the will undertakes to prove its execution, and therefore that it was error to instruct the jury that this finding would mean that it had in fact been executed, but under such circumstances as rendered it inoperative as a will. This was strictly accurate. The propounder first proves the formal execution of the will, and the court determines when this is done, and then it becomes *prima facie* a valid will, but subject to be attacked for want of capacity or because procured by fraud or undue influence. If this attack is successful, then it becomes inoperative as a will, although it had been found to have been formally executed. The charge was therefore correct.

2. After telling the jury that it was incumbent on the propounder to prove its due and formal execution, explaining what would constitute a due and formal execution, if the proof shows that the testator could read and write, the court instructed the jury, that "on proof of due and formal execution, the law would presume, in the absence of other proof, that the testator was of sound mind and disposing memory, and that he had knowledge of the contents of the paper." It is not denied that this instruction is correct where the contest rests alone upon the ground of capacity, but as applicable to the present case, that is erroneous. It is

to be observed that the court, in this part of his charge, is only instructing the jury as to what the law presumes upon the proof of due and formal execution in the absence of other proof, but he does not say directly or by implication that the presumption of sanity and of knowledge of the contents of the will may not be removed by other proof. All that he meant was, that in their investigation of the case, if they found that there was proof of due and formal execution, they would be authorized from this to presume that the testator had sound mind and disposing memory, and that he had knowledge of the contents of the will, and, in the absence of other proof, they should find for the validity of the will. In this there was no error.

3. The court next proceeded to give instructions as to the law when the will is impeached on the ground of want of testamentary capacity, and when the proof leaves it doubtful as to testator's capacity to make a will. In such case he tells the jury, "it is incumbent on the propounder to meet such proof by evidence, and satisfy the jury that the testator had a knowledge of its contents, and on this point you are not confined to the testimony of the subscribing witnesses or other persons that it was read to the testator, but you can look to all the facts and surrounding circumstances attending its execution, to see, whether in point of fact, he had a knowledge of its contents." Two objections are made to this portion of the charge, first it is said that "the charge assumes in some measure that there was proof that the will had been

read to the testator." This is a misconstruction of
the charge. The court was instructing the jury, that
in the aspect of the case presented, it was incumbent
on the propounder to prove that the testator had
knowledge of the contents of the will, and that the
proof might be made either by the subscribing wit-
nesses or other persons that the will had been read to
the testator, or knowledge might be inferred from all the
facts and circumstances attending the execution. There
was no error in this.

The other objection is, that it assumes that the
executor is required to prove the testator had a knowl-
edge of the contents of the will only in case the tes-
timony left it doubtful whether he had capacity or
not. This also is a misconstruction of the charge.
The court was instructing the jury as to the law
when the proof left it as to testator's capacity to make
a will, in a case in which the will is impeached for
want of capacity of the testator. In such case he
instructed them that proof of knowledge of the con-
tents of the will must be made. But it cannot be
fairly inferred that this is the only state of the case
in which such proof is required. This objection there-
fore is not tenable.

4. Succeeding the portion of the charge just referred
to, is the following: "But in all cases, when the
jury is satisfied of the sanity or tertamentary capacity
of the testator, proof of knowledge of the contents of
the will is not required. For the law in such cases,
as I have stated, presumes the testator had this knowl-
edge and fully comprehended the nature of the act."

It is insisted that this is erroneous as a general proposition of law, and especially in the present case, in which the contest is not only on the ground of incapacity, but also of fraud and undue influence. It is not meant by the court that proof of sanity furnishes conclusive evidence of knowledge on the part of the testator, but such proof raises a presumption of such knowledge, and hence other proof of knowledge is not required so long as this presumption stands unrebutted. This is the well established rule of law in all cases in which the will is contested on the ground of want of capacity, and it was in reference to such cases that the court was laying down the rule.

But it is insisted that if the proof should show that testator had testamentary capacity, still the facts will repel the presumption that he had a knowledge of the contents of the will, and impose upon the executor the burden of showing by plenary proof that he did in fact have such knowledge.

It is true that in many cases there may be special reasons for requiring more careful inquiry into the fact of the testator's knowledge of the contents of the paper executed as his will.

If he is in extreme old age, more or less imbecile in understanding, surrounded by interested parties, incapable of reading or writing, etc., it might be no more than reasonable to require something more than the ordinary ground of assurance on that point. 2 Redf. on Wills, 38. The suspicion excited by such circumstances should be removed by affirmative plenary evidence that the testator comprehended the dispositions

made by him, and fully and freely sanctioned them. *Patton* v. *Allison,* 7 Hum., 335.

It appears that before the judge charged the jury he was requested by the counsel for contestants to reduce his charge to writing, and at the same time application was made that in his instructions to the jury he would respond to a number of propositions of law as applicable to their view of the facts. At the close of his general charge the judge introduced the several propositions and responded to all except two, and in his responses he recognized the correctness of the rule that when circumstances of suspicion, such as those specified before, were shown to exist, the watchfulness of the jury should be increased in their investigations as to the testamentary capacity of the testator, and as to the liberty of will with which he executed his will, as well as the duty of the executor in showing clearly and fully that the testator comprehended what he was doing, and had knowledge of the contents of his will. After carefully examining the instructions requested and the responses thereto, we are of opinion that they are full and correct, and that in declining to respond to two of the propositions he committed no error. In the frame of these two propositions they could not have been charged without doing injustice to the executor, and committing positive error.

Contestants have taken several other exceptions to the charge of the court, such as his definitions of sanity and insanity as applicable to the question of testamentary capacity and of the fraud and undue influence for which a will should be set aside, but upon

examination we find these definitions in substantial conformity with our own decisions.

Exception is also taken to the charge as to the question of drunkenness as bearing upon the testamentary capacity of the testator. The court told the jury that "the mere fact that the testator was under the influence of whisky would not of itself render the testamentary act invalid. To have that effect the mind must be in that condition that the testator has no intelligent comprehension of the nature of the transactions."

This instruction is well sustained by the authorities. *Peck* v. *Cary,* 27 N. Y., 24. Without noticing other criticisms upon the charge, we are of opinion that, taken as a whole, the charge was carefully prepared, is full and substantially correct in all the aspects of the case presented by the proof, and subject to no just exception.

The proof fully sustains the verdict, and the judgment must be affirmed.