## LIPPHARD *v.* HUMPHREY.

WILLS; EVIDENCE; PRESUMPTIONS; DECLARATIONS AS EVIDENCE.

1. If a person of sound mind executes a will, and the same is his voluntary act, the law presumes knowledge on his part of its contents; and this presumption obtains with respect of an illiterate person not shown to have been able to read or write, and who makes his mark to his will in the presence of witnesses, in the absence of attending circumstances leading to a different conclusion.

2. Declarations by a testatrix, made after the execution of her will, indicating that she had made a different disposition of her property, are inadmissible in a contest attacking the will, in the absence of testimony showing mental incapacity.

No. 1691.   Submitted November 9, 1906.   Decided November 21, 1906.

HEARING on an appeal by the caveators from an order of the Supreme Court of the District of Columbia sitting as a court of probate, admitting a will to probate, after the trial of issues on a caveat.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment admitting to probate the will of Loraine Lipphard, who died December 9, 1903. The will, executed April 27, 1898, devised and bequeathed the entire estate of the testatrix to the Rev. Chastain C. Meador in trust (1) to pay all funeral expenses and debts; (2) for the use of

her husband, Adolph Lipphard, during his life; (3) to pay the expenses of the said husband's last illness, and funeral; (4) upon the death of said husband to divide the same among five children named, according to the directions therein contained. The trustee was also appointed executor.

Petition for probate was filed April 18, 1904, by the executor, who is now dead. June 17, 1904, Adolph Lipphard, the surviving husband, and William A. Lipphard, and Adolph F. Lipphard Jr.—sons of the testatrix, whose interests under the will were very small compared with the others—filed their caveat contesting the probate of the will. The grounds of contest alleged therein were (1) that the paper writing is not the will of the deceased; (2) that deceased was not, at the time of the alleged execution of the paper writing, of sound mind and memory, or capable of making a will; (3) that the deceased did not, at the time of execution, declare the paper to be her will; (4) that the alleged will and its execution were obtained by the fraud and undue influence of persons unknown to the caveators; (5) that the alleged will was not freely executed, but that the subscription thereto and publication thereof were procured by fraud and coercion exercised by persons unknown. Answers having been filed to the caveat, the issues joined were set down to be tried by jury.

The caveatees introduced as witnesses the three subscribing witnesses to the will. The first witness, Eva J. Parker, who had since married a Mr. Dolan, testified that on April 27, 1898, she was bookkeeper in the office of her father, a real-estate broker, at No. 435 4½ St., S. W., in the city of Washington, and had known the testatrix intimately all of her life. That the paper writing, consisting of three typewritten sheets shown to witness, bears her signature as a witness. That testatrix made her mark to the paper in the presence of witness and the other two subscribing witnesses. Testatrix said it was her will. She was of sound mind and capable of making a deed or will. That she said it was her will, and wanted witnesses to her mark. That the will was not read to the testatrix, nor did she discuss its

contents; only said it was her will and she wanted three witnesses to sign it. After execution, testatrix took the paper away with her, and did not mention it to witness afterwards. That after the death of testatrix, Dr. Meador said he was her executor,—a fact which witness did not before know. That witness did not know whether or not testatrix could write.

James F. Horan identified his signature as a subscribing witness. Said he was acquainted with testatrix, and was sent for to come to Parker's office. Testatrix was sitting at a desk. Miss Parker and Mr. Leimbock were present. Testatrix laughed and talked in German with Leimbock. She was capable of making a valid deed or contract. Miss Parker "read something off the will," and told him it was a will, and she wanted us as witnesses. Testatrix then said it was her will. She made her cross mark while he was there. That he does not know in whose handwriting the name "Loraine Lipphard" at the bottom of the paper is. The will was not read over to testatrix while witness was there. Does not know if testatrix could read or write.

The third subscribing witness, Henry A. Leimbock, testified that he wrote his name as witness upon the paper produced as the will, and also to the signatures of the other witnesses. He had known testatrix for forty years. All three witnesses were present when testatrix called the paper her last will and testament. That she made her mark. She was capable at the time of making a valid deed or contract. She could talk German. She could not write, and witness did not know if she could read. When witness and Horan went in, Miss Parker said she wanted them to attest a will. Testatrix said: "I have sent for you gentlemen to witness my last will and testament." He did not know in whose handwriting her name appeared, nor the words "her mark," but supposed that Miss Parker wrote the latter.

Upon the conclusion of this evidence the caveators moved the court to instruct the jury "that, there being no evidence that this will was read over to the testatrix, or that she knew or had made known to her the contents of the paper, she being illiterate, and unable to read or write, the verdict must be in favor of the

contestants on the question of execution and whether it was her will or not her will under the first and second issues." This was denied, and exception noted. The will was then offered and read.

Adolph F. Lipphard, the husband of testatrix, testified on behalf of the caveators substantially as follows: He and testatrix had lived together sixty-five years. She was aged eighty-two years at the time of her death. His testimony tended to show that the property in the name of his wife had been acquired in great part by his efforts, etc. She could neither read nor write. They lived happily. He never saw the will. Had talks with her about the way she intended to leave the property, a year before April, 1898, and three months before her death. When asked what she said, objection was made and sustained, and exception reserved. He knew nothing of the will until it was read to him by Dr. Meador after his wife's death. Both attended Dr. Meador's church. Other witnesses were called and asked to tell what testatrix had said to them about the disposition of her property,—most of this occurring not long before her death. The testimony was excluded upon objection.

In the examination of only one of these witnesses was the statement made of what was expected to be proved by these declarations. The witness was Sarah Lipphard, a daughter-in-law of testatrix. The statement of what was to be proved by her was that, eight or ten months before her death, testatrix declared to her that she had left her property in a manner different from that recited in the will produced.

It was proved by the caveatees that Dr. Meador produced the will after testatrix's decease, and gave it to an attorney to file in the office of the register of wills.

On conclusion of all the evidence, caveators renewed their motion made at the close of the proof of execution, and on the same grounds, which was again denied. Caveatees moved an instruction to find for them on all issues. The court overruled this as to the two issues relating to execution, and granted it as to the remaining issues relating to fraud and undue influence.

The court then charged the jury that, unless they believed that the contents of the paper were known to testatrix at the time of execution, they should find for the caveators. If, however, they should find from the evidence that testatrix did know the contents of the paper, and did sign the same by her mark, as her will, in the presence of witnesses, who signed the same as witnesses in her presence, the verdict should be in favor of the caveatees.

The jury returned answers to all of the issues favorably to the caveatees; and from the judgment thereon entered, probating the will, this appeal has been prosecuted.

*Mr. Chapin Brown, Mr. Charles H. Bauman,* and *Mr. Delmas C. Stutler* for the appellants.

*Mr. B. F. Leighton* and *Mr. C. Clinton James* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

When or by whom the will of Loraine Lipphard was written does not appear in the evidence, but there is not a single circumstance of suspicion attending its execution. Though an aged and illiterate woman, she was of sound mind and body at the time. Bearing the instrument, she went alone to the office of a young lady whom she well knew. She said it was her will, and that she had come to have its execution attested by three witnesses, which number was then required to a will creating an estate in land. The two other witnesses sent for were acquaintances, one of them for forty years. She declared the instrument to be her last will, and asked them to attest it. She affixed her mark to it in their presence, and they then and there signed as witnesses. The witnesses were competent persons, evidently intelligent, had no interest whatever in the will; and no attempt was made to impeach their credibility. When the act was complete, the testatrix departed with the paper, and evi-

dently delivered it to the pastor of her church, who was made executor and trustee.

Under such conditions the court was undoubtedly right in denying the appellant's motion to direct a verdict for them on the issue of due execution because the will was not read to the testatrix at the time of execution and attestation. If possessed of the necessary capacity, persons illiterate, as well as literate, can dispose of their property by will. No distinction is made between them in the former or existing statutes regulating the making of wills, and the procedure for their probate. In all cases the subscribing witnesses, if living and within the jurisdiction, must be called to prove the fact of execution; and if it appears, from their evidence, that the will was formally executed and the testator competent, it must be admitted to probate. Code, secs. 131, 132, 134, 1626 [31 Stat. at L. 1211, 1212, 1433, chap. 854.]

It is a settled rule, under such statutes, that if a person of sound mind executes a will, and the same is his voluntary act, the law presumes knowledge on his part of its contents. *Taylor* v. *Creswell,* 45 Md. 422, 431.

The appellants concede this where the testator is able to read the instrument, but deny its application where he is unable to do so.

Illiterate persons, as well as others, may wish the contents of their wills to remain unknown to all but the confidential scrivener. Being of sound minds, and having satisfied themselves in their own way that the will has been written as directed, they may call in witnesses and execute it by affixing their marks, or having their names signed, without having the contents again made known to them. There is no good reason for excluding them from the benefit of the presumption which attaches to the same acts when performed by persons able to read and write. The great weight of authority is opposed to making such an exception to the general rule. *Shanks* v. *Christopher,* 3 A. K. Marsh, 144; *Boyd* v. *Cook,* 3 Leigh, 32, 51; *Hoshauer* v. *Hoshauer,* 26 Pa. 404, 406; *Vernon* v. *Kirk,* 30 Pa. 218, 224; *King*

v. *Kinsey,* 74 N. C. 261, 263; *Guthrie* v. *Price,* 23 Ark. 396, 407; *Clifton* v. *Murray,* 7 Ga. 564, 50 Am. Dec. 411; *Doran* v. *Mullen,* 78 Ill. 342, 346; *Browning* v. *Budd,* 6 Moore, P. C. C. 430, 435.

The majority of the cases cited by the appellants maintain the view that the presumption that a testator knew the contents of the instrument the execution of which he called the witnesses to attest and that it expressed his will, stands unless there are attending circumstances leading to a different conclusion. As we have seen, there were no such circumstances in this case.

Passing to the question raised on the second assignment of error, we think it equally clear that there was no error in excluding the evidence of declarations made by the testatrix concerning the contents of her will. Evidence of the declarations of a testator are sometimes admissible in cases where the mental capacity of the testator is in issue, not, however, as proof of the facts declared, but as tending to show the condition of mind at the time of execution. *Throckmorton* v. *Holt,* 180 U. S. 552, 573, 45 L. ed. 663, 673, 21 Sup. Ct. Rep. 474.

In this case the mental capacity of the testatrix was clearly proved, and there was no evidence whatever tending to dispute the fact. Moreover, the declarations had no tendency to show the want of mental capacity. The sole object of the proposed evidence was necessarily to show that because the testatrix had, some time after executing the will, made declarations indicating that she had made a different disposition of her property from that recited therein, she could not have known the contents at the time of its execution. The proposition is without foundation, either on principle or authority.

The judgment was right, and will be affirmed.

*Affirmed.*