# CHARLESTON.

BAILEY v. BEE *et al.*

Submitted November 19, 1913.   Decided December 2, 1913.

1.  WILLS—*Proceedings to Annul—Presumption—Knowledge of Testatrix.*

    Where a will is executed according to legal formalities, it will be presumed, in the absence of evidence to the contrary, that it was read by the testator, or that he otherwise became acquainted with its provisions.   (p. 291).

2.  SAME—*Proceedings to Annul—Knowledge of Contents—Proof Required.*

    Upon an issue, *devisavit vel non,* it is not necessary to prove, be-

sides formal *factum* of the paper and capacity, the further fact, by direct and positive evidence, that the testator knew the contents of the instrument; the jury may infer such knowledge from evidence of capacity and execution. (p. 293).

3. SAME—*Proceedings to Annul—Knowledge of Contents—Circumstantial Evidence.*

Knowledge by the testator of the contents of a will before its execution, may be proved, when necessary, by circumstantial evidence sufficient reasonably to satisfy the jury, direct evidence not being indispensable. (p. 293).

4. WITNESSES—*Competency—Son of Testatrix—Testimony Against Interests.*

A son of testatrix, for whom she makes no testamental provision, although a necessary party to a proceeding to annul her will, is not, under §23, Ch. 130, Code 1906, incompetent as a witness, in support of the will, to testify to the testatrix's competency. He thereby testifies against his interest, permissible alike at common law and under the statute. (p. 288).

Appeal from Circuit Court, Mercer County.

Bill by Katie I. Bailey and others against Isaiah Bee and others. From decree for defendants, plaintiffs appeal.

*Affirmed.*

*Samuel W. Williams, D. E. French* and *Mollohan, McClintic & Mathews,* for appellants.

*B. W. Pendleton, John M. McGrath* and *Woods & Martin,* for appellees.

LYNCH, JUDGE:

Katie I. Bailey and others, children of A. J. Lacy, deceased, who was a son of the testatrix, filed their bill in equity to annul the will of Mary L. Bee, on the alleged grounds of mental incompetency and undue influence. The defendants are her husband, Dr. Isaiah Bee, executor under the will, her son, Dr. I. E. Bee, and the children of Mollie K. McCreery, deceased, her daughter. The bill charges Dr. Isaiah Bee with having secured the execution of the will in behalf of the person named in it as beneficiary. On an issue, *devisavit vel non,* the jury found against plaintiffs as contestants; the court entered judgment on the verdict, and, having entered its decree declaring the will valid, dismissed the suit. Plaintiffs have appealed.

The will names Topsy Hopkins, sometimes called Topsy Bee, as sole beneficiary. Though not related to the testatrix by blood or marriage, Topsy, now fifteen years old, had prior to the date of the will become a member of the Bee family—not, however, by an adoption pursuant to the statute. They had taken her to rear and educate. The evidence is clear that a strong reciprocal attachment arose and continued uninterrupted between Mrs. Bee and the little girl. They became constant companions, whether at home, on the streets or elsewhere. They occupied the same apartments, and slept in the same bed. Topsy administered to the wants and physical needs of the old lady, and performed other similar amenities generally pleasurable to the aged, especially to women in the years of their physical and mental decline. On the contrary, it does not appear that any of her grandchildren visited her with any degree of regularity. It is true, none of them resided in Mercer county. But that fact affords no reasonable excuse for their apparent neglect of an aged and physically infirm grandmother, who no doubt felt the lack of interest thus exhibited. She often remarked that Dr. I. E. Bee, her only living child, would be amply provided for out of his father's large estate, and that she intended her property to go to Topsy, especially for the purpose of her education. Under these circumstances, it can not be said, with any degree of plausibility, that Mrs. Bee unnaturally chose her ward, and not next of kin, as the object of her bounty.

The questions presented relate to the competency of witnesses, the sufficiency of the evidence to show knowledge by the testatrix of the provisions of the will, and the propriety of certain instructions given and refused.

The contestants seek to impeach the competency of Dr. I. E. Bee, as a witness testifying to his mother's qualification to execute the will. They cite §23, Ch. 130, Code 1906, especially that provision declaring incompetent a party to a suit when examined about a transaction or communication with one then deceased. The son is a party; a necessary party. He is bound by the decree entered pursuant to the verdict on the issue *devisavit vel non.* Living, as he did, in his mother's home as one of her family, he knew, better than any other person, her qualification and competency, and, in fact, any

infirmity, either mental or physical, constituting a disqualification. If competent, he was, therefore, an important witness for the proponents of the will, who called him as a witness and in whose behalf he testified. But, his testimony being in support of the will, he necessarily spoke against his own pecuniary interest. He was directly interested in defeating it; because, if annulled, he would, as heir at law, take by descent a material part of his mother's valuable estate, real and personal. Under these conditions, does the language of §23 render him incompetent? The contestants say, with great emphasis, that it does clearly disqualify him. However, we are not persuaded to adopt that opinion.

The section cited was enacted to remove the common-law incompetency of any party to a suit as a witness in his own behalf. Thereafter, he could, except for some purposes, testify in support of any claim asserted by him in any court in this state. But, even when excluded under the common-law inhibition, his adversary could, if he so desired, call as a witness in his behalf a party to a suit, and, when examined, compel him to testify against his own interest or claim and in support of a counter claim or interest. If competent under the previous rigid exclusion, the same reason enforces the conclusion favorable to his competency under the statute, the purpose of which was to enlarge, and not to restrict, the competency of a witness, although a party to the suit.

But we are not without authority in support of the right and competency of the junior Bee to testify as a witness on behalf of the proponents. The same principle was discussed in *Coffman v. Hedrick*, 32 W. Va. 119, 123. A brother of the testator, who but for the will would have taken by inheritance, was called by the proponents to prove the *factum* of the will. The court held him competent. It was a contest like that now before us, not a mere probate without challenge. The third point of the syllabus is: "One of the attesting witnesses to a will, who is a brother to the party who is claimed to have made the will in controversy, and who is introduced by the contestees to prove the execution of the paper in the absence of the other subscribing witness, who can not be found after diligent inquiry, although said witness so introduced is a party to the suit brought to impeach the validity of said will,

and would inherit a portion of the property devised in the absence of said will, yet, if he is unprovided for in said will, he is not incompetent under Code, Ch. 130, §23, to testify in support of said will as to its proper execution''. That case does not deny competency to testify as to capacity at the time of the will, if by so doing the testimony of the witness is adverse to his own interest. The question is there discussed in all its bearings. The rule of necessity, declared by §18, Ch. 77, Code 1906, does not impinge upon or controvert the doctrine asserted in the Coffman case or in this case.

Nor does *Kerr* v. *Lunsford,* 31 W. Va. 659, conflict with this holding; because, in that case, the interested witness was held incompetent on account of an interest hostile to the validity of the will and the pecuniary advantage enuring to him in the event of its successful impeachment. If permitted to testify, he would have given evidence in his own behalf against the devisee under the will.

But *Crothers* v. *Crothers,* 40 W. Va. 169, accords with the views herein expressed on the question of Dr. I. E. Bee's competency. It says that ''a person interested may give evidence against his own interest, both at common law and under §23, Ch. 130, Code'', the purpose of which ''was to enlarge the competency of witnesses. It does not *per se* render any incompetent who are competent at common law. The exception therein does not create incompetency, but leaves the cases specified in it just as they were at common law''. It was there held that ''children of a decedent, who are his distributees, are competent witnesses to prove a transfer by their father of personal estate in favor of the transferee'', such testimony being of course directly hostile to their interest in the property so transferred. In the opinion, it is stated that, ''to exclude a witness, he must be interested in favor of the party calling him. *Sims* v. *Givan,* 2 Blackf. 461; *Kennedy* v. *Barnett,* 1 Bibb 154''. In *Oxenden* v. *Penerice,* 2 Salk. 691, it is held that a legatee is competent as a witness to disprove the will. He then swears against his interest. See, also, *Robinson* v. *Robinson,* 20 S. C. 567. Dr. I. E. Bee was made a party solely because but for the will he would take by inheritance a portion of the property thereby

devised; and, as he spoke as a witness against this pecuniary interest, we hold him competent under the statute.

But the witness Patterson, who testified for the contestants on the question of testamentary capacity, was not competent. His wife, a party to the suit and a grandchild of the testatrix, was disqualified to testify in her own behalf to impeach the will. He was likewise disqualified. *Kerr* v. *Lunsford,* 31 W. Va. 659; *Freeman* v. *Freeman,* 71 W. Va. 303. However, as the decree, here affirmed, establishes the will, the effect of his testimony is now negligible.

Appellants also insist that the proof is insufficient to show due execution of the will by the testatrix, in that it fails to show that it was read by or to her, or that she otherwise acquired knowledge of its contents. Following the course approved in *Kerr* v. *Lunsford, supra,* the proponents' first offered the will in evidence, and, by the attesting witnesses, proved its due execution and the competency of the testatrix, and rested, thus having made a prima facie case. The contestants then introduced the testimony of sundry witnesses to show the mental incapacity of the testatrix to make the will, after which proponents offered in rebuttal much evidence on the same subject. But the contestants offered no proof of her want of knowledge of its contents, or of undue influence in procuring its execution. They, however, contend, in effect, that, to sustain the validity of the will, it must be made to appear affirmatively, from the evidence of proponents, that the testatrix had knowledge of the provisions of the will at the time of its execution.

The will was prepared by an attorney at his office in Princeton, on the day it was signed and attested. The husband of the testatrix furnished him the information for its preparation, and the draftsman wrote it in conformity with that information. The husband then took the will, and secured the attendance of the attesting witnesses, the three going together to his residence, where the testatrix caused her signature to be signed, after which the witnesses also signed, the three being present during the whole time. The proof shows that, when Dr. Bee, the husband, and the attesting witnesses arrived at the residence, the former went into the house, and in a few minutes he and Mrs. Bee returned to the porch, where

the two witnesses were sitting. What occurred in the house, if anything, does not appear; no witness states. Dr. Bee, on his return with his wife drew the paper from his pocket, and, according to the attesting witness Barbor, a merchant, who was examined before the jury, informed his wife "that we had come to witness the signing of that paper she wanted prepared—that he had had it prepared; and she jokingly said she would have to read it first, that she did not put her name to anything without reading it. She took the paper and kept it for some little time, and then turned to me and made some remark about being nervous, and asked me to sign her name to it, which I did, and then I signed my own name below to the certificate". Though this witness had not expressly stated that the testatrix read the will before her signature was written, yet, to the question propounded to him in chief, "She read the will I believe you say"? he replied, "Yes, sir"; to which question and answer there was neither objection nor exception. Both remain without challenge. The testimony of the other attesting witness, Pendleton, a lawyer and at the date of the will prosecuting attorney for Mercer county, accords with and substantially corroborates that of Barbor, both of them speaking frankly and intelligently of what occurred on that day. Pendleton says: "When I got there we stopped on the front porch, and Dr. Bee went in for Mrs. Bee. She returned with him, and there was considerable conversation engaged in there on general matters and in regard to the will. What that conversation was I am unable to state at this time. Dr. Bee produced the will, and my recollection is he took it from his inside pocket, and Mrs. Bee asked Dr. Bee if the will was fixed the way she wanted it, and he replied that it was. She then requested Mr. Barbor to sign the will for her, which he did. We then signed as witnesses". When asked, "What statement, if any, did Mrs. Bee make on that occasion as to whom she was willing her property"? he replied that "she stated she wanted to give her property to this little girl Topsy Bee". In reply to the question on cross-examination whether Mrs. Bee read the will or heard it read, he replied: "It was not read to her *in my presence,* and she did not read it *in my presence,* is my recollection".

The evidence thus detailed, while not all, is the part material

to the actual execution of the paper in controversy, and the sufficiency of which for that purpose is denied by the contestants. But, from an examination of the authorities, and the testimony of these witnesses, when read and considered in the light of the facts and circumstances stated by other witnesses as to the character, habits and intelligence of Mrs. Bee, her skill in the management and conduct of her business, her information on local matters, and her interest in Topsy, whom, according to several of the witnesses, she had selected as the beneficiary of her will, our conclusion is that the evidence touching the *factum* of the will is ample to sustain the finding of the jury, as in effect it did find, that the will was duly executed by the testatrix with knowledge of its contents.

Speaking generally, it may be said that the great and prevailing weight of authority is that, where a will is executed according to the prescribed legal formalities, it will be *presumed,* in the absence of evidence to the contrary, that the testator read it, or otherwise became acquainted with its provisions. Citation of authorities must, on account of the number, necessarily be limited; and, for that reason, one only from each of several different states is cited. *Ross* v. *Ross,* 117 N. W. (Ia.) 110; *Estate of Latour,* 140 Cal. 414; *Waters* v. *Waters,* 222 Ill. 26, 113 Am. St. 359; *Cramer* v. *Crumbaugh,* 3 Md. 491; *Sechrest* v. *Edwards,* 61 Ky. 163; *Pettes* v. *Bingham,* 10 N. H. 514; *Snodgrass* v. *Smith,* 42 Col. 60; *Brown* v. *McBride,* 129 Ga. 97; *McConnell* v. *Keir,* 76 Kan. 527; *Hoshauer* v. *Hoshauer,* 26 Pa. 404. *In re Jones Will,* 85 N. Y. S. 294; *Patton* v. *Hope,* 37 N. J. Eq. 522. *Key* v. *Holloway,* 66 Tenn. 575; *King* v. *Kinsey,* 74 N. C. 361; *Mordecai* v. *Canty,* 86 S. C. 470; *Hawkins* v. *Oatway,* 143 Wis. 137. It is not necessary, upon an issue of *devisavit vel non,* to prove, besides the formal execution of the paper and the capacity of the testator to make it, the further fact, by distinct evidence, that the testator knew the contents of the instrument; for the jury may infer such knowledge from the evidence of capacity and execution. *Carr* v. *McCamm,* 18 N. C. 276; 40 Cyc. 1100, 1285. Such knowledge may be proved, where necessary, by circumstantial evidence sufficient reasonably to satisfy the jury, direct evidence not being indispensable. *Montague* v.

*Allan,* 78 Va. 592; 40 Cyc. 1285; Page on Wills, §380; *Winn* v. *Grier,* 217 Mo. 420; *Jesse* v. *Parker,* 6 Gratt. 57, 52 Am. Dec. 102. It is only where it appears *affirmatively* that the testator *did not* read the will himself and that it was not read to him, that it becomes necessary to show, by satisfactory evidence, that he was in some other way acquainted with the contents of the instrument. *Day* v. *Day,* 3 N. J. Eq. 549; 40 Cyc. 1100. The proponents made out a prima facie case in favor of the validity of the will, when they produced it in evidence and proved, by the attesting witnesses, its formal execution and the capacity of the testatrix to make it. *Kerr* v. *Lunsford,* 31 W. Va. 659; 40 Cyc. 1285. And, after the contestants had introduced their impeaching testimony as to testamentary incapacity, the proponents thereafter, by a clear preponderance of evidence, fully sustained the burden of proof imposed upon them in reference to this issue.

Contestants offered no proof to show that the testatrix did not read the will, or that it was not read to her. Apart from the answers of Pendleton and Barbor to the questions heretofore stated, there is no evidence that Mrs. Bee did or did not read the paper, or hear it read, before signing it. For all that appears, she may have read it or heard it read before its execution. She and her husband were together in the room before she signed it, although only for a few minutes. He may then have fully informed her of the contents of the paper, or read it to her. What occurred subsequently neither proves nor disproves previous knowledge of its provisions on her part. It was incumbent on contestants to rebut the presumption of knowledge, which the authorities cited says exists under similar circumstances. "From the due execution of the will, it is presumed that the testator was acquainted with its contents, although he could neither read nor understand the language in which it was written". *Hoshauer* v. *Hoshauer,* 26 Pa. 404. The court said in the case cited: "We must admit the presumptions that arise from the ordinary course of doing such business, and one of them is that a person signing any instrument and asking others to attest it has taken due care to understand its contents. His signing shows that he is giving expression to some purpose of his mind, and we must presume that he knows the writing contains that

expression''.  We find authority in *Wombachter* v. *Harthelme*, 194 Ill. 425, for the statement that testimony denying ability on the part of the testator to read any writing in English or to write except to sign his name has no tendency to establish his inability to make a will, or ignorance of its contents when executed.  See also *Ex parte Brock,* 37 S. C. 348.

But, in this case, there is the unchallenged testimony of Barbor, an attesting witness, that Mrs. Bee did read the will; of both attesting witnesses, that Dr. Bee informed her it was prepared according to her directions; and of Pendleton, that she desired Topsy to have her property.  Many other witnesses testify to the same desire and intention expressed by the testatrix, although two witnesses for contestants say she told them she intended to will it to her son A. J. Lacy. . As stated, there was no evidence of any undue or improper influence on the part of any person in order to procure the testatrix to make the will she did make, or any will of any character.  But, having heard the testimony, of all the witnesses, the jury, in effect, by its verdict that the paper purporting to be the true last will of Mrs. Bee was in fact such will, necessarily also found, under full and proper instruction by the court on that point, that she knew its contents.  Otherwise, they could not have returned the verdict they did return.  Nor can we now say the finding was without sufficient evidence to warrant it, either in respect of the due execution of the will or of the competency of Mrs. Bee to make it.  On the contrary, our conclusion is that the evidence offered amply justified the jury's verdict, and the court's judgment and decree thereon.

The contestants further complain of the giving of certain instructions asked by the proponents, and of the refusal of some asked by them.  Our examination leads us to the conclusion that the court did not err in its rulings on any of the instructions.  Those given for proponents, numbered 1 to 6, 9 and 11, find support in *Kerr* v. *Lunsford, supra;* 7, 8 and 10, in *Nicholas* v. *Kershner,* 20 W. Va. 252, and *Jarrett* v. *Jarrett,* 11 W. Va. 584.

Of those requested by contestants, the court gave such as properly presented their views to the extent supported by the evidence, and refused those which, in our judgment, either

did not propound correct legal principles or principles not stated in other instructions given for them. Numbers 1, 2, 18, 19 and 20, if given, would have stated to the jury principles directly conflicting with what has been said touching the necessity of proof of actual knowledge by Mrs. Bee of the contents of the will when executed by her, thus ignoring the presumption of such knowledge on her part. Number 2 relates to undue influence, as to which no proof appears anywhere in the record. Number 3, if given, would have said the will did not deprive Dr. Isaiah Bee, the husband, of his curtesy in the real estate and marital rights in the personal property disposed of by the will. How that information, although true, would have aided the jury in determining the validity of the will is not apparent. Nor does it plainly appear what benefit would accrue to contestants if the court had given it. Number 5 was not necessary, because the principles therein stated were embraced by 4, 6 and 8, given. No evidence supports number 15. In fact, its statements are contrary to the evidence. Number 16 is sufficiently covered by 17, given; and 18, 19, 20 and 21, by 13 and 23, given. And we find no special merit in number 22, and think its refusal proper, although contestants insist that its refusal operated to their prejudice. Its apparent purpose was to minimize, as far as possible, the effect of Dr. I. E. Bee's evidence of his mother's competency.

We are therefore of opinion to affirm the decree.

*Affirmed.*